**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
HATTERAS ENTERPRISES INC,
a California corporation, DEBRA MATTES, an
individual, and MADMACK LLC,                                   **MEMORANDUM OF**
a California limited liability company,                        **DECISION & ORDER**
                              Plaintiffs,                      15-CV-5887 (ADS)(ARL)


                    -against-


FORSYTHE COSMETIC GROUP, LTD
a New York corporation, HARRIET
ROSE, an individual, MICHAEL ROSE,
an individual, COLOR CLUB, LLC,
a New York Limited Liability Company,
HARRIET ROSE 2009 IRREVOCABLE
TRUST, and DOES 1 THROUGH 50, inclusive,
                              Defendants.
----------------------------------------------------------X

<u>APPEARANCES:</u>

**Yourist Law Corporation APC**
*Attorneys for the Plaintiffs*
11111 Santa Monica Boulevard Suite 100
Los Angeles, CA 90025-3333
        By: Bradley J Yourist, Esq.
            Daniel J Yourist, Esq., Of Counsel

**Franklin Thomas Bigelow, Jr., Esq.**
*Attorney for the Plaintiffs*
133 North Altadena Drive Suite 403
Pasadena, CA 91107

**Michael A J Nangano, Esq.**
*Attorney for the Plaintiffs*
555 West Fifth Street Suite 3100
Los Angeles, CA 90013

**Osborn Law. P.C.**
*Attorneys for the Defendants*
295 Madison Avenue, 39th Floor
New York, NY 10017
        By: Daniel Adam Osborn, Esq., Of Counsel

**Woollacott LLP**
*Attorneys for the Defendants*
10850 Wilshire Boulevard Suite 825
Los Angeles, CA 90024
By: Jay A Woollacott, Esq., Of Counsel

**SPATT, District Judge**.

This case arises from six agreements between the Plaintiffs Hatteras Enterprises Inc. ("Hatteras"), Debra Mattes ("Mattes"), MadMack LLC ("MadMack" and collectively, the "Plaintiffs") with the Defendants Forsythe Cosmetic Group, Ltd ("Forsythe"), Harriet Rose, Michael Rose, Color Club, LLC ("Color Club"), Harriet Rose 2009 Irrevocable Trust (the "Trust"), and Does 1 through 50 (collectively, the "Defendants"). The agreements created a partnership between the parties for the purpose of producing and distributing a special color changing nail polish.

The Plaintiffs originally brought an action against the Defendants in the Superior Court of California, County of Los Angeles ("Los Angeles Superior Court") alleging that the Defendants made misrepresentations to induce the Plaintiffs into entering agreements with the Defendants. Subsequently, the action was removed by the Defendants from Los Angeles Superior Court to the United States District Court, Central District of California, on the basis of diversity of citizenship jurisdiction, and assigned to Judge R. Gary Klausner. Thereafter, Judge Klausner granted the Defendants' motion to transfer the action to the Southern District of New York, and the case was assigned to Judge Deborah A. Batts. Judge Batts issued an order transferring the action to the Eastern District of New York, and the action was then assigned to this Court.

Presently before the Court is a motion by the Plaintiffs to retransfer this case back to the Central District of California. For the reasons set forth below, the Plaintiffs' motion is denied.

# I. BACKGROUND

## A. As to the Alleged Facts

The Plaintiff Mattes is a California resident; the Plaintiff Hatteras is a California corporation with its principal place of business in California; and the Plaintiff MadMack is a California limited liability company with its principal place of business in California. (Am. Compl., Not. of Removal, Dkt. No. 1–3 [the "Am. Compl."].) at ¶¶ 1–3.) It is undisputed that the Defendant Forsythe is a New York corporation with its principal place of business in New York; and the Defendants Michael Rose and Harriet Rose are New York citizens domiciled in New York. (Compare id. at ¶ 4 with Not. of Removal, Dkt. No. 1 ["Not. of Removal"] at ¶ 5(b).) There are disputes of fact as to whether the Defendants Color Club and the Trust are legally recognized entities that have the capacity to be sued. (Compare Am. Compl. at ¶¶ 6–7 with Not. of Removal at ¶¶ 5(c), (d).)

According to the amended complaint, in 1992, the Plaintiff Mattes developed a formula for creating nail polish that changed color in the sunlight due to a chemical reaction to ultra-violet rays. (Am. Compl. at ¶¶ 13–15.) At an unspecified time, Mattes formed and became the chief executive officer of Hatteras, which held registered trademarks associated with Mattes' nail polish formula. (Id.) For a period of twenty-years, Hatteras used Mattes' formula to manufacture and sell nail polish to distributors, retail stores, and other nail polish manufacturers. (Id.)

It is alleged that in November 2011, Mattes received a request from Avon, apparently a nail polish company, for an order of two million bottles of nail polish. (Id. at ¶ 14.) In December 2011, the Defendant Michael Rose allegedly approached Mattes with a proposal to

form a joint partnership with Forsythe, a company that he controlled, for the purpose of helping Mattes fill the Avon order. (Id. at ¶ 16.)

After a period of negotiations, on June 29, 2012, the parties entered into six separate agreements to facilitate the joint partnership (collectively, the "Agreements").

First, Mattes formed the Plaintiff MadMack and entered into a licensing agreement under which Hatteras agreed to grant MadMack a license to use the trademarked products associated with Mattes' nail polish. (See the Licensing Agreement, Rose's June 19, 2015 Decl., Dkt. No. 7–4, Ex. C [the "Licensing Agreement"].)

Second, MadMack and the Trust formed Solar Club, LLC ("Solar Club") and entered into an operating agreement under which MadMack and the Trust each acquired fifty percent stakes in Solar Club. (See the Operating Agreement, Rose's June 19, 2015 Decl., Dkt. No. 7–4, Ex. A [the "Operating Agreement"].)

Third, MadMack entered into an agreement to assign its rights to Mattes' nail polish formula under the Licensing Agreement to Solar Club. (See the Assignment and Assumption Agreement, Rose's June 19, 2015 Decl., Dkt. No. 7–4, Ex. B [the "Assignment Agreement"].")

Fourth, the Defendant Forsythe entered into a services agreement pursuant to which it agreed to provide general services and operational support to Solar Club in exchange for thirty percent of Solar Club's revenue. (See the Services Agreement, Rose's June 19, 2015 Decl., Dkt. No. 7–4, Ex. D [the "Services Agreement"].)

Fifth, the Defendant Forsythe entered into a loan agreement with Solar Club to lend Forsythe an initial amount of $103,651.48 and other unspecified amounts with an interest rate of the prime rate plus one percent. (See the Loan Agreement, Rose's June 19, 2015 Decl., Dkt. No. 7–4, Ex. E [the "Loan Agreement"].)

4

Sixth, the Defendant Forsythe entered into a security agreement with Solar Club pursuant to which Solar Club pledged all of its assets to Forsythe as collateral for Solar Club's repayment obligations under the loan agreement. (See the Security Agreement, Rose's June 19, 2015 Decl., Dkt. No. 7–4, Ex. F [the "Security Agreement"].)

All six agreements contain New York choice of law provisions. (See Operating Agreement at ¶ 11.6; Assignment Agreement at ¶ 5; Licensing Agreement at ¶ 18(g); Services Agreement at ¶ 11(a); Loan Agreement at ¶ 6.10; Security Agreement at ¶ 6(h).)

In addition, four of the agreements — the Licensing Agreement, the Services Agreement, the Loan Agreement, and the Security Agreement — contain clauses selecting courts in Nassau County as the sole forum for resolving judicial disputes arising from the agreements. (See Licensing Agreement at ¶ 18(g); Services Agreement at ¶ 11(a); Loan Agreement at ¶ 6.10; Security Agreement at ¶ 6(h).)

However, the Operating Agreement and the Assignment Agreement do not contain forum selection clauses.

**B. As to the Procedural History**

On January 21, 2015, the Plaintiffs commenced this action by filing a complaint in California Superior Court against the Defendants.

On April 17, 2015, the Plaintiffs filed an amended complaint, alleging that the Defendants made a number of material misrepresentations in the course of negotiating the Agreements. (See Am. Compl. at ¶¶ 19–54.) Based on these alleged misrepresentations, the Plaintiffs asserted claims against the Defendants for fraud by intentional misrepresentation; fraud by omission; securities fraud in violation of Section 25401 of the California Corporate Code; and breach of a confidentiality agreement. (See id.) Further, they seek monetary damages; punitive

and exemplary damages; rescission of the Agreements; specific performance of the confidentiality agreement; injunctive relief; an accounting; and the imposition of a constructive trust on the Defendants' allegedly wrongfully obtained assets.  (See id.)

On June 9, 2015, the Defendants removed the case from California Superior Court to the United States District Court, Central District of California, pursuant to 28 U.S.C. § 1441(b) on the basis of diversity of citizenship jurisdiction.  (See the Defs.' Not. of Removal, Dkt. No. 1.)

On June 19, 2015, the Defendants moved to dismiss the amended complaint pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6).  (See the Defs.' Mot. to Dismiss, Dkt. No. 6.)

On the same day, the Defendants filed a motion pursuant to 28 U.S.C. § 1404 ("Section 1404") to transfer the case from the Central District of California to the Southern District of New York.  (See the Defs.' June 19, 2015 Mem. of Law in Support of Transfer, Dkt. No. 7–2.)  In the alternative, they moved under the doctrine of *forum non conveniens* to transfer the case to a New York State Court in Nassau County.  (See id.)

The Plaintiffs opposed both motions.  Relevant here, in opposition to the Defendants' motion to transfer, the Plaintiffs asserted that the forum selection clauses were void under California public policy.  Specifically, the Plaintiffs relied on Hall v. Superior Court, 150 Cal. App. 3d 411, 416, 197 Cal. Rptr. 757, 761 (Cal. Ct. App. 1983), for the proposition that in securities fraud cases, California public policy discourages the enforcement of contract clauses that select forums outside of California because of the risk that defendants could evade the application of California securities laws.  (See the Pls.' July 13, 2015 Opp'n Mem. of Law, Dkt. No. 11, at 9.)  The Plaintiffs also asserted that the Defendants failed to demonstrate that the

convenience of the parties and witnesses, as well as the interests of justice, justified a transfer of the case under Section 1404. (See id. at 12–13.)

On August 5, 2015, Judge Klausner issued an order granting the Defendants' motion to transfer venue to the Southern District of New York and denying their motion to dismiss as moot (the "August 5, 2015 Order"). (See the Aug. 5, 2015 Order, Dkt. No. 15, at 5.) In so doing, Judge Klausner noted that under the ruling in Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas, 134 S. Ct. 568, 187 L. Ed. 2d 487 (2013), "forum selection clauses are considered prima facie valid and enforced." To avoid the enforcement of a forum selection clause, Judge Klausner stated that the Plaintiff must show the clauses are not enforceable because:

> (1) incorporation of the clause into the contract was the result of fraud, undue influence, or overt bargaining power; (2) the selected forum is so gravely difficult and inconvenient that the complaining party will for all practical purposes be deprived of its day in court; or (3) enforcement of the clause would contravene a strong public policy of the forum in which the suit is brought.

(See the Aug. 5, 2015 Order, Dkt. No. 15, at 3.)

The Plaintiffs did not argue that the forum selection clauses were unenforceable based on the first two factors. Rather, their "primary argument [was] that enforcement of the clause would contravene strong California public policy codified in the Corporate Securities Law of 1968, specifically California Corporations Code sections 25000 – 25740." (Id. at 4.) However, Judge Klausner rejected the Plaintiffs' argument because he found that they had "not shown that a New York court would be unable to protect the interests of California citizens . . . . Nor have Plaintiffs shown that New York law offers no protections similar to those found under California Securities Law." (Id.) He further stated that the burden of proof that the California state court applied in Hall in determining whether a forum selection clause should be enforced was different than the burden imposed in federal court in determining whether a Section 1404 transfer of

venue under a forum selection clause is appropriate. (Id.) For this reason, he found that Hall was distinguishable. (See id.)

Accordingly, Judge Klausner ruled that the Plaintiffs had failed to show that the forum selection clauses in the Agreements requiring that the action be brought in New York were unenforceable, and therefore, venue was not proper in the Central District of California. (Id.)

On August 6, 2015, the case was transferred from the Central District of California to the Southern District of New York and assigned to Judge Batts.

On September 9, 2015, Judge Batts issued an order directing the parties to show cause as to why the court should not transfer the case to the Eastern District of New York in light of the forum selection clauses designating Nassau County as the appropriate venue for this case. (See Order to Show Cause, Dkt. No. 18.)

The parties did not respond to the order to show cause. As a result, on October 5, 2015, Judge Batts issued an order transferring the case from the Southern District of New York to the Eastern District of New York, whereupon it was assigned to this Court. (See Transfer Order, Dkt. No. 19.)

**C. The Present Motion**

As noted, presently before the Court is the Plaintiffs' motion to retransfer the case back to the Central District of California. In their memorandum, the Plaintiff assert that (i) the forum selection clauses are not enforceable because the Plaintiffs were not actually parties to the four agreements that contained forum selection clauses; (ii) Judge Klausner did not apply the proper California choice of law rules; (iii) he failed to properly analyze the effect of California public policy on the enforcement of the forum selection clauses; (iv) he failed to recognize the differences between California and New York rescission law; and (v) the Plaintiffs allegedly

rescinded the Agreements prior to the Defendants filing their motion to transfer the case to the Southern District of New York. (See the Pls.' Dec. 11, 2015 Mem. of Law, Dkt. No. 28, 11–24.)

In response, the Defendants assert that the Plaintiffs' motion should be denied under the law of the case doctrine. (See the Defs.' Mem. of Law, Dkt. No. 31, at 5–6.) They further assert that the forum selection clauses are enforceable; the August 5, 2015 Order rejecting the Plaintiffs' public policy argument was correct; and the Agreements have not been rescinded. (See id. at 6–15.)

In reply, the Plaintiffs argued that the law of the case doctrine does not apply to this case because the August 5, 2015 Order was clearly erroneous. (See the Pls.' Reply Mem. of Law, Dkt. No. 32, at 3–4.)

As set forth below, the Court agrees with the Defendants that the law of the case doctrine applies to the August 5, 2015 Order and that the Plaintiffs have failed to show that the Order was clearly erroneous or resulted in a manifest injustice.

## II. DISCUSSION

### A. The Legal Standard

"The 'law of the case' doctrine posits that if a court decides a rule of law, that decision should continue to govern in subsequent stages of the same case." Sagendorf-Teal v. Cty. of Rensselaer, 100 F.3d 270, 277 (2d Cir. 1996) (quoting DiLaura v. Power Authority of State of New York, 982 F.2d 73, 76 (2d Cir. 1992)). "Law of the case rules have developed to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit." In re PCH Associates, 949 F.2d 585, 592 (2d Cir. 1991) (quoting 18 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 4478, at 788 (1981)). "[T]he doctrine applies as much to the decisions of a coordinate court in the same case as to a court's

own decisions." Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 816, 108 S. Ct. 2166, 2177, 100 L. Ed. 2d 811 (1988).

"Federal courts routinely apply law-of-the-case principles to transfer decisions of coordinate courts." Id. (collecting cases). Indeed, "'the policies supporting the [law of the case] doctrine apply with even greater force to transfer decisions than to decisions of substantive law; transferee courts that feel entirely free to revisit transfer decisions of a coordinate court threaten to send litigants into a vicious circle of litigation.'" SongByrd, Inc. v. Estate of Grossman, 206 F.3d 172, 178 n. 7 (2d Cir. 2000) (quoting Christianson, 486 U.S. at 816, 108 S. Ct. at 2177) (alteration in original).

However, the law of the case doctrine is not absolute. Rather, "the doctrine is 'admittedly discretionary and does not limit a court's power to reconsider its own decisions prior to final judgment.'" Pescatore v. Pan Am. World Airways, Inc., 97 F.3d 1, 8 (2d Cir. 1996) (quoting Virgin Atlantic Airways, Ltd. v. National Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992). Nevertheless, the Supreme Court has cautioned that although a "court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, . . . courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'" Christianson, 486 U.S. at 817, 108 S. Ct. at 2178 (quoting Arizona v. California, 460 U.S. 605, 619, 103 S. Ct. 1382, 1391, 75 L. Ed. 2d 318 (1983)). Stated another way, the law of the case doctrine precludes reconsidering the basis for a transfer decision, "if the transferee court can find the transfer decision plausible." Id. at 803, 108 S. Ct. at 2171.

The Second Circuit does not appear to have directly endorsed a standard by which district court judges should exercise their discretion in revisiting the decisions of a transferor courts. See

SongByrd, Inc., 206 F.3d at 178 n.7 ("A district court considering a retransfer motion *might* be limited by 'law of the case' principles, at least in the absence of changed circumstances.") (emphasis added). However, some lower courts in this Circuit have applied a standard to retransfer motions that is similar to the standard that courts use in analyzing motions for reconsideration. See Clarendon Nat. Ins. Co. v. Lan, 152 F. Supp. 2d 506, 524 (S.D.N.Y. 2001) (analyzing whether the law of the case doctrine applies to a retransfer motion based on the motion for reconsideration standard); Washington Nat. Life Ins. Co. of New York v. Morgan Stanley & Co. Inc., 974 F. Supp. 214, 218 (S.D.N.Y. 1997) (same); cf. Jenkins Brick Co. v. Bremer, 321 F.3d 1366, 1370–71 (11th Cir. 2003) ("Courts must rarely invoke the 'clear error' exception, less the exception swallow the rule. With this principle in mind, the exception can be restated this way: in a close case, a court must defer to the legal conclusion of a coordinate court in the same case; only when the legal error is beyond the scope of reasonable debate should the court disregard the prior ruling.").

That is, to justify reconsideration, a party must point to "'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" DiLaura v. Power Auth. of State of N.Y., 982 F.2d 73, 76 (2d Cir. 1992) (quoting Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992)). With regard to the latter justification for reconsideration — namely, a clear error or the need to prevent a manifest injustice —, the Second Circuit has stated "reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995).

Also, "a motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided." Id.; see also Lego A/S v. Best-Lock Const. Toys, Inc., No. 3:11-CV-1586 (CSH), 2013 WL 1611462, at *2 (D. Conn. Apr. 15, 2013) ("A motion for reconsideration is not simply a second bite at the apple for a party dissatisfied with a court's ruling.") (quoting Morien v. Munich Reinsurance Am., Inc., 270 F.R.D. 65, 69 (D. Conn. 2010)). Furthermore, unless the movant makes a showing of manifest injustice, courts generally refuse to consider new arguments made on reconsideration that could have been made in the prior proceedings. See StreetEasy, Inc. v. Chertok, No. 15-2003, 2016 WL 3251877, at *2 (2d Cir. June 7, 2016) (Summary Order) ("No manifest injustice would result from declining to consider Chertok's new argument or depart from the law of the case . . . . Under these circumstances, we will not exercise our discretion to consider this waived argument or depart from the law of the case."); cf. Kahn v. NYU Med. Ctr., No. 06CIV.13455(LAP), 2008 WL 190765, at *1 ("[A] motion to reconsider is not an opportunity to put forward additional arguments that the movant could have made, but neglected to make before judgment."); see also Hom v. Brennan, 840 F. Supp. 2d 576, 581 (E.D.N.Y. 2011) (Spatt, J) ("[A] motion for reconsideration 'is not to be used as a means to reargue matters already argued and disposed of by prior rulings or to put forward additional arguments which it could have made but neglected to make before judgment.'") (quoting Morris v. State of New York, No. 91 Civ. 634, 1995 WL 155953, at *2 (N.D.N.Y. April 5, 1995)).

**B. As to the Legal Analysis**

The August 5, 2015 Order is a decision by a coordinating court to which the law of the case doctrine applies. Indeed, given the procedural ping pong that preceded the transfer of this case to this Court, the Court is cautious with regard to granting a retransfer motion that would

only serve to further delay proceeding to the merits of this case. See Hoffman v. Blaski, 363 U.S. 335, 349, 80 S. Ct. 1084, 1092, 4 L. Ed. 2d 1254 (1960) ("Surely a seemly system of judicial remedies . . . regarding controverted transfer provisions of the United States Code should encourage, not discourage, quick settlement of questions of transfer.") (Frankfurter, J, dissenting).

Further, as described below, the Plaintiffs have failed to show any "clear error" or "manifest justice" which would give the Court pause in denying the motion to retransfer under the law of the case doctrine.

With regard to manifest injustice, the Plaintiffs do not argue that a manifest injustice would result from litigating their claims in a New York court. Indeed, it is undisputed that four of the Agreements contained forum selection clauses explicitly selecting New York forums for adjudicating the Plaintiffs' claims; *all* six Agreements contained New York choice of law provisions; and the three principal named Defendants Forsythe, Michael Rose, and Harriet Rose are based in New York and intended to perform their obligations under the Agreements in New York.

Under these circumstances, the Court finds that the possibility that the Plaintiffs would have to litigate their claims in New York was eminently foreseeable and therefore, denying the Plaintiffs' motion to retransfer this back to the Central District of California would not result in a manifest injustice. See Moses v. Bus. Card Exp., Inc., 929 F.2d 1131, 1139 (6th Cir. 1991) (affirming the denial of a retransfer motion and finding no manifest injustice would result from enforcing forum selection clause because the fact that the plaintiffs would have to bear greater litigation expenses than the defendants is a risk "inherent in a forum selection clause").

With regard to clear error, the Court finds that Judge Klausner applied the proper legal standard in analyzing the Defendants' Section 1404 motion to transfer the case to New York. In particular, he correctly cited to <u>Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas</u>, *supra*, for the propositions that the party seeking to set aside the forum selection clause bears the burden of establishing that the clause is unenforceable; and that a forum selection clause will not be given controlling weight in only the most exceptional circumstances. (<u>See</u> Aug. 5, 2015 Oder, Dkt. No. 15, at 3.)

Further, the Court is not persuaded by the arguments offered by the Plaintiffs asserting that Judge Klausner committed a clear error by finding that the Plaintiffs failed to meet their heavy burden in showing that the forum selection clauses were unenforceable. First, the Plaintiffs assert that the Judge Klausner failed to address the fact that the Plaintiffs were only signatories to two of the six Agreements — namely, the Operating Agreement and the Assignment Agreement —, and both of those agreements did not contain forum selection clauses. (<u>See</u> the Pls.' Jan. 8, 2016 Reply Mem. of Law, Dkt. No. 32, at 3.) Therefore, according to the Plaintiffs, had Judge Klausner not overlooked this fact, he would have found that they were not bound by the forum selection clauses. (<u>See</u> <u>id.</u>)

However, in opposition to the Defendants' original motion to transfer, the Plaintiffs' argument was limited to their contentions that enforcing the forum selection clauses contravened California public policy and that the Plaintiff's choice of forum and the convenience of the California forum weighed against transferring venue to New York. (<u>See</u> the Pls.' July 13, 2015 Opp'n Mem. of Law, Dkt. No. 11, at 9–14.) They did not raise the fact that they did not sign the four agreements with forum selection clauses as a basis for not enforcing those clauses against them. For that reason, the Court finds it is inappropriate for the Plaintiffs to raise that contention

for the first time here.  See Burda Media, Inc. v. Viertel, 604 F. App'x 91, 91–92 (2d Cir. 2015) (Summary Order) ("Viertel's arguments are barred by the law of the case doctrine, which 'forecloses reconsideration of issues that were decided—or that could have been decided—during prior proceedings' in the same case.") (emphasis added) (quoting United States v. Williams, 475 F.3d 468, 471 (2d Cir. 2007)); Mallard v. Potenza, No. 94-CV-223 (CBA), 2007 WL 4198246, at *4 n.2 (E.D.N.Y. Nov. 21, 2007) ("[T]he Court need not address plaintiff's new arguments to the contrary under the doctrine of 'the law of the case.'").

Further, it is well-established in both the Ninth Circuit and this Circuit that "the fact a party is a non-signatory to an agreement is insufficient, standing alone, to preclude enforcement of a forum selection clause." Aguas Lenders Recovery Grp. v. Suez, S.A., 585 F.3d 696, 701 (2d Cir. 2009); see also Manetti-Farrow, Inc. v. Gucci Am., Inc., 858 F.2d 509, 514 n.5 (9th Cir. 1988) ("Manetti–Farrow argues the forum selection clause can only apply to Gucci Parfums, which was the only defendant to sign the contract.  However, 'a range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses.'") (quoting Clinton v. Janger, 583 F.Supp. 284, 290 (N.D. Ill. 1984)).  Thus, even assuming *arguendo* that the Plaintiffs' argument is properly before the Court, the fact that the Plaintiffs were not signatories to the four agreements containing forum selection clauses would not, by itself, alter Judge Klausner's finding that the Plaintiffs were bound by those clauses.

Second, the Plaintiffs contend that Judge Klausner erred by failing to "appl[y] California choice of law rules to determine whether or not to uphold the 'choice of forum' in the six agreements."  (See the Pls.' Dec. 11, 2015 Mem. of Law, Dkt. No. 28–1, at 16.)  Again, the Court disagrees.

"The overriding framework governing the effect of forum selection clauses in federal courts . . . is drawn from federal law," and therefore, "federal law should be used to determine whether an otherwise mandatory and applicable forum clause is enforceable." Martinez v. Bloomberg LP, 740 F.3d 211, 217 (2d Cir. 2014) (internal quotation marks and citations omitted); see also Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 32, 108 S. Ct. 2239, 2245, 101 L. Ed. 2d 22 (1988) ("We hold that federal law, specifically 28 U.S.C. § 1404(a), governs the District Court's decision whether to give effect to the parties' forum-selection clause and transfer this case to a court in Manhattan."); Rudgayzer v. Google, Inc., 986 F. Supp. 2d 151, 155 (E.D.N.Y. 2013) ("Questions of venue and forum are procedural, so the enforceability of the forum-selection clause is governed by federal law."). Thus, far from being clearly erroneous, the Court finds that Judge Klausner correctly applied Section 1404 in determining whether to give effect to the forum selection clauses in the Agreements.

Third, the Plaintiffs assert, again relying on Hall, that Judge Klausner should have refused to enforce the forum selection clauses because the clauses contravened California's public policy of protecting securities investors. (See the Pls.' Dec. 11, 2015 Mem. of Law, Dkt. No. 28–1, at 18.)

The Plaintiffs made this same argument in opposition to the Defendants' original motion to transfer this case to a New York court, and Judge Klausner considered and rejected it. (See Aug. 5, 2015 Oder, Dkt. No. 15, at 3–4.) Without pointing to any controlling authority or data that Judge Klausner overlooked, the Court declines to second-guess Judge Klausner's legal conclusions on this issue. See Washington Nat. Life Ins. Co. of New York v. Morgan Stanley & Co. Inc., 974 F. Supp. 214, 221 (S.D.N.Y. 1997) ("This Court, absent a showing that the previous decision is entirely unsupported by the facts, will not second-guess the Louisiana

court's factual conclusions, which were based upon the appropriate factors under the law. Because Plaintiffs have provided no evidence that the previous decision was unsupported by the facts, the Court finds reconsideration on this basis without merit.").

Fourth, the Plaintiffs argue that the August 5, 2015 Order was clearly erroneous because it failed to address the fact that under Section 1691 of the California Civil Code, a party can effect a rescission if he or she (a) promptly "[g]ive[s] notice of rescission to the party as to whom he rescinds"; and (b) "[r]estore[s] to the other party everything of value which he has received from him under the contract or offer to restore the same upon condition that the other party do likewise, unless the latter is unable or positively refuses to do so." Cal. Civ. Code § 1691. In addition, the California statute provides "When notice of rescission has not otherwise been given or an offer to restore the benefits received under the contract has not otherwise been made, the service of a pleading in an action or proceeding that seeks relief based on rescission shall be deemed to be such notice or offer or both." Id. By contrast, according to the Plaintiffs, New York law only permits rescission after a judicial determination that rescission is proper. (See the Pls.' Mem. of Law, Dkt. No. 28–1, at 22–23.) According to the Plaintiffs, these purported differences in New York and California rescission law should have provided a sufficient reason for Judge Klausner to deny the Defendants' motion to transfer this case to a New York court. (See id.)

However, as with many other arguments offered in support of their present motion to retransfer, the Plaintiffs did not argue in their original opposition to the Defendants' motion to transfer that there were distinctions between New York and California law with respect to their rescission claims, nor that these distinctions justified declining to enforce the forum selection clauses selecting a New York forum. (See the Pls.' July 13, 2015 Opp'n Mem. of Law, Dkt. No.

11, at 9–14.) Thus, as already discussed earlier, it is not proper under the law of the case doctrine to raise new theories that could have been raised in the prior proceedings.

In addition, as noted above, forum selections clauses are presumptively valid, and a plaintiff cannot overcome this presumption merely by showing that "the foreign law or procedure [is] different or less favorable than" the plaintiff's preferred choice of forum and choice of law. Roby v. Corp. of Lloyd's, 996 F.2d 1353, 1363 (2d Cir. 1993). Rather, he must show that "for all practical purposes be deprived of his day in court" by being forced to litigate in the forum selected by the agreement. Id.; see also See AJZN, Inc. v. Yu, No. 12-CV-03348 (LHK), 2013 WL 97916, at *4 (N.D. Cal. Jan. 7, 2013) (rejecting an argument by a plaintiff that enforcing a forum selection clause selecting Delaware courts would contravene California public policy because the plaintiff "has not even argued, let alone proven, that a Delaware court will be unable to protect the interests of California citizens").

Here, the Plaintiffs have provided no reason why being compelled to litigate in a New York federal court would deprive them of a remedy for their rescission claims, or any of their other claims. To the contrary, "under the rule of Van Dusen v. Barrack, 376 U.S. 612, 84 S. Ct. 805, 11 L.Ed.2d 945 (1964), a transferee court applies the substantive state law, including choice-of-law rules, of the jurisdiction in which the action was filed.'" Menowitz v. Brown, 991 F.2d 36, 40 (2d Cir. 1993). Thus, the fact that this case is in a New York forum has nothing to do with what law will be applied to the Plaintiffs' rescission claims. Rather, like a California federal court, this Court will undertake a conflict of law analysis based on California choice of law rules to determine whether it should apply New York or California law to the Plaintiffs' common law rescission claims. In other words, this Court will apply the same standard as a

California federal court in determining the choice of law to be applied to the Plaintiffs' rescission claims.

The Plaintiffs have not shown that a manifest injustice would result from this Court, as opposed to a California federal court, making that determination. Thus, reconsideration of the August 5, 2015 Order on this basis is also not warranted. See Rosenbloom v. Barclays Bank PLC, No. 13-CV-04087, 2014 WL 2726136, at *4 (N.D. Ill. June 16, 2014) (enforcing a forum selection clause in part, because the plaintiff did not argue "that the forum [defendants] chose for the English Action is inadequate to handle a contract dispute fairly. Indeed, U.S. courts generally recognize that English courts are more than capable of handling complex commercial litigation."); GLT Technovations, LLC v. Fownes Bros. & Co., No. 12-CV-00466 RMW, 2012 WL 1380338, at *6 (N.D. Cal. Apr. 20, 2012) (rejecting a plaintiff's argument in opposition to a defendant's motion to transfer venue to the Southern District of New York because although "[i]t is true that this court is probably more familiar with California law than other courts, . . . 'it is also true that other federal courts are fully capable of applying California law'"") (quoting Foster v. Nationwide Mut. Ins. Co., No. 07–04928, 2007 WL 4410408, at *6 (N.D. Cal. Dec. 14, 2007)); Verizon New Jersey, Inc. v. DMJM Harris, Inc., No. CIV.A. 08-3028 (SRC), 2009 WL 1283173, at *5 (D.N.J. May 1, 2009) (enforcing a forum selection clause, in part, because "New York courts are fully capable of adjudicating the claims in this case").

Finally, the Plaintiffs point to Section 1691 of the California Civil Code, which as noted earlier, states, "When notice of rescission has not otherwise been given or an offer to restore the benefits received under the contract has not otherwise been made, the service of a pleading in an action or proceeding that seeks relief based on rescission shall be deemed to be such notice or offer or both." The Plaintiffs contend that by filing this action, they have satisfied the

requirements of rescission under Section 1691 of California Civil Code and therefore, all obligations under the Agreement, including the forum selection clause, are null and void.  (See the Pls.' Dec. 11, 2016 Mem. of Law, Dkt. No. 28–1, at 23.)

Again, the Plaintiffs did not raise this argument before Judge Klausner and therefore, it is not a proper basis for reconsideration of the August 5, 2015 Order.  Further, as just described, it is not clear whether Section 1691 of the California Civil Code applies to this case because the Agreements all contain New York choice of law clauses, and this Court has not yet determined what law should be applied to the Plaintiffs' claims.

In addition, even if the Plaintiffs had properly satisfied the requirements of Section 1691, they offer no legal authority for the proposition that satisfying the requirements for the unilateral rescission of an agreement also renders a forum selection clause null and void.  Indeed, most courts appear to have rejected similar arguments.  See, e.g., Wholesale Merch. Processing, Inc. v. Orion Commc'ns, Inc., No. 03:12-CV-02003- (HU), 2013 WL 1361863, at *4 (D. Or. Mar. 4, 2013), ("WMP further argues Orion's alleged breach of the Agreement allows WMP to rescind the Agreement in its entirety, including the forum selection clause. The court agrees with Orion that this argument puts the proverbial cart before the horse. Whether WMP can rightfully rescind the Agreement is one of the questions that must be decided in this case. Interpretation of the forum selection clause is necessary to determine where the rescission claim will be tried."), report and recommendation adopted, No. 3:12-CV-02003-HU, 2013 WL 1353048 (D. Or. Apr. 3, 2013); KTV Media Int'l, Inc. v. Galaxy Grp., LA LLC, 812 F. Supp. 2d 377, 389 (S.D.N.Y. 2011) (rejecting an argument that the plaintiffs' claim for rescission bars the application of a forum selection clause); Starlight Co. v. Arlington Plastics Mach., Inc., No. C011121SI, 2001 WL 677908, at *4 (N.D. Cal. June 8, 2001) (rejecting an argument that a forum selection clause

was unenforceable based on allegations of rescission because "plaintiff presents no cases where a court has rescinded an entire contract for the purpose of invalidating a forum-selection clause" and "[g]ranting a rescission of the Contract to invalidate the forum-selection clause would essentially give plaintiff the relief it seeks without requiring it to prove its case").

Thus, the Court finds that the Plaintiffs' have failed to show that Judge Klausner's alleged failure to consider the Plaintiffs' claims of rescission would have changed the outcome of the Defendants' transfer motion.

In sum, the Court holds that the Plaintiffs have not met their heavy burden of showing that the August 5, 2015 Order was clearly erroneous or resulted in a manifest injustice. Accordingly, the Court adheres to the August 5, 2015 Order under the law of the case doctrine.

### III. CONCLUSION

For the foregoing reasons, the Plaintiffs' motion to retransfer this case to the Central District of California is denied in its entirety.

Further, on July 5, 2016, the parties filed a proposed stipulation requesting a stay of discovery during the pendency of this motion. In addition, the Plaintiffs indicated that in the event their motion for retransfer is denied, they would likely seek to appeal the August 5, 2015 Order in the Ninth Circuit.

The Plaintiffs are directed to file on ECF within seven days of the date of this Order a letter indicating how they intend to proceed with this case in light of this Order — namely, whether they intend to file an appeal in the Ninth Circuit, and if so, whether the Court must stay this matter during the pendency of that appeal.

**SO ORDERED.**
Dated: Central Islip, New York
July 30, 2016

_/s/ Arthur D. Spatt_
ARTHUR D. SPATT
United States District Judge