**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
HATTERAS ENTERPRISES INC *a California*
*corporation*, DEBRA MATTES *an individual*,
MADMACK LLC *a California limited liability*
*company*,

                 Plaintiff(s),

            -against-

FORSYTHE COSMETIC GROUP, LTD
*a New York corporation*, HARRIET ROSE *an*
*individual*, MICHAEL ROSE *an individual*,
COLOR CLUB, LLC *a New York limited liability*
*company*, HARRIET ROSE 2009
IRREVOCABLE TRUST, DOES
*1 THROUGH 50*, inclusive,

                 Defendant(s).

--------------------------------------------------------X

**MEMORANDUM OF**
**DECISION & ORDER**
2:15-cv-05887 (ADS)(ARL)

<u>**APPEARANCES:**</u>

**Yourist Law Corporation APC**
*Co-Counsel for the Plaintiffs*
11111 Santa Monica Boulevard Suite 100
Los Angeles, CA 90025-3333
        By:     Daniel J Yourist, Esq.,
                   Bradley J Yourist, Esq., Of Counsel

**Kilka Parrish and Bigelow**
*Co-Counsel for the Plaintiffs*
133 N Altadena Drive
Suite 403
Pasadena, CA 91107
        By:    Franklin Thomas Bigelow, Jr., Esq., Of Counsel

**Michael Nanagano Law Offices**
*Co-Counsel for the Plaintiffs*
555 West Fifth Street Suite 3100
Los Angeles, CA 90013
        By:     Miachel A. J. Nangano, Esq., Of Counsel

**Robert M. Silverman**
*Co-Counsel for the Plaintiffs*
269 South Beverly Drive, Suite 1358
Beverly Hills, CA 90212
      By:    Robert M. Silverman, Esq., Of Counsel

**Osborn Law. P.C.**
*Co-Counsel for the Defendants*
295 Madison Avenue
39th Floor
New York, NY 10017
      By:    Daniel Adam Osborn, Esq., Of Counsel

**Woollacott LLP**
*Co-Counsel for the Defendants*
10850 Wilshire Boulevard Suite 825
Los Angeles, CA 90024
      By:    Jay A Woollacott, Esq., Of Counsel

**SPATT, District Judge**:

The Plaintiffs Hatteras Enterprises Inc. ("Hatteras"), Debra Mattes ("Mattes"), and MadMack LLC ("MadMack") (collectively, the "Plaintiffs") brought this action against the Defendants Forsythe Cosmetic Group, Ltd ("Forsythe"), Harriet Rose, Michael Rose, Color Club, LLC ("Color Club"), Harriet Rose 2009 Irrevocable Trust (the "Trust"), and certain as yet unnamed Does (collectively, the "Defendants"), alleging that the Defendants, *inter alia*, engaged in common law fraud.

Presently before the Court is a motion by the Defendants to dismiss the complaint pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P." or "Rule") 12(b)(6). For the following reasons, the Defendants' motion is granted in part, and denied in part.

# I.  BACKGROUND

## A.  The Relevant Facts

The following facts are drawn from the first amended complaint, and for the purposes of the instant motion, are presumed to be true.

Each of the Plaintiffs is domiciled in California.  Each of the Defendants is domiciled in New York.

In or around 1992, Mattes developed a formula for nail polish that changed color in the sunlight.  By November 2011, Mattes' polish had become so popular that she could no longer fill the purchase orders that she was receiving.  It is alleged that in November 2011, Mattes received a request from Avon, apparently a nail polish company, for an order of two million bottles of nail polish.  In December 2011, Michael Rose allegedly approached Mattes with a proposal to form a joint partnership with Forsythe, a company that he controlled, for the purpose of helping Mattes fill the Avon order.  Mattes traveled to New York to meet with Michael Rose.

On January 4, 2012, the parties entered into a confidentiality agreement.  (*See* the Confidentiality Agreement, Ex. A to the Am. Compl., ECF No. 1-3 (the "Confidentiality Agreement")).  The Confidentiality Agreement states that the parties would hold all confidential information in confidence; would not disclose it to any third-party; would not reverse engineer or remanufacture any of the confidential information; and would only use the confidential information for the purpose of determining whether the parties should enter into a business arrangement.  Relevant here, the Confidentiality Agreement further provides that "[u]pon termination or expiration of this Agreement . . . or upon written request of the other party, each party shall promptly return to the other all documents and tangible materials representing the other's Confidential Information and all copies thereof."  (Confidentiality Agreement ¶ 5).  The

Confidentiality Agreement contains a California choice of law provision. (Confidentiality Agreement ¶ 8 ("This Agreement shall be governed by the laws of the State of California without regard to the conflicts of law provisions thereof.")).

After a period of negotiations, on June 29, 2012, the parties entered into six separate agreements to facilitate the joint partnership (collectively, the "Partnership Agreements").

First, Mattes formed MadMack and entered into a licensing agreement under which Hatteras agreed to grant MadMack a license to use the trademarked products associated with Mattes' nail polish. (*See* the Licensing Agreement, Rose's June 19, 2015 Decl., ECF No. 7–4, Ex. C (the "Licensing Agreement")).

Second, MadMack and the Trust formed Solar Club, and entered into an operating agreement under which MadMack and the Trust each acquired fifty percent stakes in Solar Club. (*See* the Operating Agreement, Rose's June 19, 2015 Decl., ECF No. 7–4, Ex. A (the "Operating Agreement")).

Third, MadMack entered into an agreement to assign its rights to Mattes' nail polish formula under the Licensing Agreement to Solar Club. (*See* the Assignment and Assumption Agreement, Rose's June 19, 2015 Decl., ECF No. 7–4, Ex. B (the "Assignment Agreement")).

Fourth, Forsythe entered into a services agreement pursuant to which it agreed to provide general services and operational support to Solar Club in exchange for thirty percent of Solar Club's revenue. (*See* the Services Agreement, Rose's June 19, 2015 Decl., ECF No. 7–4, Ex. D (the "Services Agreement")).

Fifth, Forsythe entered into a loan agreement with Solar Club to lend Forsythe an initial amount of $103,651.48 and other unspecified amounts with an interest rate of the prime rate plus

one percent. (*See* the Loan Agreement, Rose's June 19, 2015 Decl., ECF No. 7–4, Ex. E (the "Loan Agreement")).

Sixth, Forsythe entered into a security agreement with Solar Club pursuant to which Solar Club pledged all of its assets to Forsythe as collateral for Solar Club's repayment obligations under the loan agreement. (*See* the Security Agreement, Rose's June 19, 2015 Decl., ECF No. 7–4, Ex. F (the "Security Agreement")).

All six agreements that constitute the Partnership Agreements contain New York choice of law provisions. (Operating Agreement ¶ 11.6 ("This Agreement, and the application or interpretation hereof, shall be governed by and in accordance with the laws of the State of New York applicable to agreements made and fully to be performed therein, and specifically the Act."); Assignment Agreement ¶ 5 ("This Agreements and all controversies arising from or relating to performance under this Agreement shall be governed and construed in accordance with the laws of the State of New York, without regard to its conflict of laws principles."); Licensing Agreement ¶ 18(g) ("This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of New York applicable to agreements executed within and to be wholly performed within the State of New York."); Services Agreement ¶ 11(a) ("This Agreement shall be governed by, and construed in accordance with, the laws of the State of New York, without regard to its conflict of law principles."); Loan Agreement ¶ 6.10 ("This Agreement shall be construed in accordance with and governed by the laws of the State of New York, without regard to its conflicts of law principles."); Security Agreement ¶ 6(h) ("This Agreement shall be construed in accordance with and governed by the laws of the State of New York, without regard to its conflicts of law principles.")).

The Plaintiffs allege that the Defendants made numerous misrepresentations to Mattes for the purpose of inducing her to enter into the Agreements.  Namely, they allege that the Defendants misrepresented that: Mattes would work as a 50/50 partner with Michael Rose; Forsythe was a thirty-four (34) million dollar company, second only to OPI as the largest nail polish producing company in the United States; the color changing nail polish manufactured under the Agreements would be of equal or better quality than that previously manufactured by the Plaintiffs; the Defendants were capable of fulfilling, and would fulfill the entire two million bottle order placed by Avon to Avon's satisfaction; Mattes would have primary responsibility for retail sales and all major marketing decisions would be jointly made; the Defendants would not need to purchase or rent extra facilities or equipment, and the partnership would therefore be immediately profitable; all business and financial records, Google analytics, and company staff would be available to Mattes as a 50/50 partner; Mattes would be permitted to continue promoting and selling the color changing nail polish on her own website, through trade shows, and through other preexisting points of contact; the Defendants would sell the nail polish through the Plaintiffs' existing distributors as well as new ones; the Defendants would sell the product to the Plaintiffs' old customers as well as new ones; the Defendants would continue to use the Plaintiffs' public relations company; Taylor Swift would be the Defendants' new spokesperson; Lady Gaga would wear the nail polish to the New York fashion week in September 2012; all press and publicity materials would include the "Solaractive" trade name; the Defendants had a deal with Amway which included the nail polish as well as other color changing products manufactured by the Plaintiffs; and the Defendants were willing to add the color-changing to various packages in their existing product line.

The Plaintiffs allege that the above statements were false, and that in truth, Mattes would not be a 50/50 partner with the Defendants; the nail polish manufactured by the Defendants would

be of inferior color and quality than that previously manufactured by the Plaintiffs; the Plaintiffs would not be permitted to market or promote the new "Ruby Wing" color-changing nail polish; Harriet Rose would obtain the trademark for the "Ruby Wing" polish instead of Solar Club; Mattes would not be permitted to participate in any decisions regarding the product; the Defendants would refuse to manufacture or sell the product to Avon; the Defendants would refuse to sell the product to any customer, whether preexisting or new, that was referred to them by Mattes; the Defendants would favor their own distributors over the Plaintiffs' distributors; the Defendants created a private label brand called "Funky Fingers" using Mattes' trade secrets and intellectual property; the only information Mattes received was quarterly royalty reports; the Defendants refused to tell the Plaintiffs how many bottles of nail polish they were planning to produce or what their price would be; the Defendants refused to provide the Plaintiffs with marketing and sales information; the Defendants did not have a deal with Amway; the Defendants insisted that the Plaintiffs shut down their preexisting website; the Defendants did not have agreements with Taylor Swift or Lady Gaga to wear or promote the product; the Defendants represented that Color Club invented the color changing technology instead of SolarActive, and marketed "Ruby Wig" in a way that suggested that Color Club created it rather than Solar Club; the Defendants comingled the business and marketing of Solar Club with Color Club, which resulted in decreased sales in the entity in which the Plaintiffs invested.

The Plaintiffs state that if the Defendants had disclosed the actual facts as stated above, the Plaintiffs would not have entered into the Agreements.

Finally, the Plaintiffs allege that they have made a written request for the return of all confidential information, pursuant to the terms of the Confidentiality Agreement, and that the Defendants have failed to comply with that request.

## B. The Relevant Procedural History

On January 21, 2015, the Plaintiffs commenced this action by filing a complaint in Superior Court of California, County of Los Angeles, against the Defendants.

On April 17, 2015, the Plaintiffs filed an amended complaint, alleging that the Defendants made a number of material misrepresentations in the course of negotiating the Agreements. (*See* Am. Compl. ¶¶ 19–54). Based on these alleged misrepresentations, the Plaintiffs asserted claims against the Defendants for fraud by intentional misrepresentation; fraud by omission; rescission of a written contract on the grounds of fraud; securities fraud in violation of Section 25401 of the California Corporate Code; rescission of written contract on the ground of securities fraud in violation of Section 25501 of the California Corporate Code; and breach of a confidentiality agreement. Further, they seek monetary damages; punitive and exemplary damages; rescission of the Agreements; specific performance of the confidentiality agreement; injunctive relief; an accounting; and the imposition of a constructive trust on the Defendants' allegedly wrongfully obtained assets.

On June 9, 2015, the Defendants removed the case from California Superior Court to the United States District Court for the Central District of California (the "CDCA"), pursuant to 28 U.S.C. § 1441(b) on the basis of diversity of citizenship jurisdiction.

On June 19, 2015, the Defendants moved to dismiss the amended complaint pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6).

On the same day, the Defendants filed a motion pursuant to 28 U.S.C. § 1404 ("Section 1404") to transfer the case from the CDCA to the Southern District of New York. In the alternative, they moved under the doctrine of *forum non conveniens* to transfer the case to a New York State Court in Nassau County.

On August 5, 2015, Judge R. Gary Klausner of the CDCA issued an order granting the Defendants' motion to transfer venue to the Southern District of New York and denying their motion to dismiss as moot.

On August 6, 2015, the case was transferred from the Central District of California to the Southern District of New York and assigned to Judge Deborah A. Batts.

On September 9, 2015, Judge Batts issued an order directing the parties to show cause as to why the court should not transfer the case to the Eastern District of New York in light of the forum selection clauses designating Nassau County as the appropriate venue for this case. The parties did not respond to the order to show cause. As a result, on October 5, 2015, Judge Batts issued an order transferring the case from the Southern District of New York to the Eastern District of New York, whereupon it was assigned to this Court.

On December 21, 2015, the Plaintiffs filed a motion to transfer the case back to the Central District of California.

On July 30, 2016, the Court denied the Plaintiffs' motion to transfer.

On August 25, 2016, the Plaintiffs filed a notice of appeal in the Ninth Circuit. The parties agreed that this action would be stayed pending the resolution of Plaintiffs' Appeal. On August 30, 2016, the Ninth Circuit issued an order directing the Plaintiffs to voluntarily withdraw their appeal, or in the alternative, to show cause why it should not be dismissed for lack of jurisdiction. On August 31, 2016, the Plaintiffs filed a notice of appeal in the Second Circuit.

The Plaintiffs never responded to the Ninth Circuit's order, and the appeal to that court was dismissed on October 4, 2016. On March 22, 2017, the Plaintiffs voluntarily withdrew their appeal in the Second Circuit. On May 16, 2017, this Court lifted its stay of the case, as all appeals had been dismissed or withdrawn.

On September 15, 2017, the Defendants filed the instant motion to dismiss.

## II. DISCUSSION

### A. The Legal Standard on a Motion to Dismiss

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the Plaintiff. *See Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013); *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Bold Elec., Inc. v. City of N.Y.*, 53 F.3d 465, 469 (2d Cir. 1995); *Reed v. Garden City Union Free School Dist.*, 987 F. Supp. 2d 260, 263 (E.D.N.Y. 2013).

Under the now well-established *Twombly* standard, a complaint should be dismissed only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). The Second Circuit has explained that, after *Twombly,* the Court's inquiry under Rule 12(b)(6) is guided by two principles:

> First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss and [d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 664, 129 S. Ct. 1937, 1940, 173 L. Ed. 2d 868 (2009)).

Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and . . . determine whether they plausibly give rise to an entitlement of relief." *Iqbal*, 556 U.S. at 679.

**B. As to the Choice of Law**

All six of the agreements that constitute the Partnership Agreements contain New York choice of law provisions.  (*See* Operating Agreement ¶ 11.6 ("This Agreement, and the application or interpretation hereof, shall be governed by and in accordance with the laws of the State of New York applicable to agreements made and fully to be performed therein, and specifically the Act."); Assignment Agreement ¶ 5 ("This Agreements and all controversies arising from or relating to performance under this Agreement shall be governed and construed in accordance with the laws of the State of New York, without regard to its conflict of laws principles."); Licensing Agreement ¶ 18(g) ("This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of New York applicable to agreements executed within and to be wholly performed within the State of New York."); Services Agreement ¶ 11(a) ("This Agreement shall be governed by, and construed in accordance with, the laws of the State of New York, without regard to its conflict of law principles."); Loan Agreement ¶ 6.10 ("This Agreement shall be construed in accordance with and governed by the laws of the State of New York, without regard to its conflicts of law principles."); Security Agreement ¶ 6(h) ("This Agreement shall be construed in accordance with and governed by the laws of the State of New York, without regard to its conflicts of law principles.")).  The Confidentiality Agreement contains a California choice of law provision.  (Confidentiality Agreement ¶ 8 ("This Agreement shall be governed by the laws of the State of California without regard to the conflicts of law provisions thereof.")).

Each of the causes of action, save the breach of contract claim, arises out of the Partnership Agreements.  The breach of contract action arises out of the Confidentiality Agreement.

Although transferee courts typically apply the transferor court's choice of law provisions when a case has been transferred pursuant to Section 1404, that rule does not apply when a case

has been transferred as a result of a forum selection clause. *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 134 S. Ct. 568, 583, 187 L. Ed. 2d 487 (2013) ("Because § 1404(a) should not create or multiply opportunities for forum shopping, we will not apply the [rule requiring a transferee court to apply the transferor court's choice of law principles] when a transfer stems from enforcement of a forum-selection clause: The court in the contractually selected venue should not apply the law of the transferor venue to which the parties waived their right." (internal citations and quotation marks omitted)). Therefore, because this case was transferred here based on a forum selection clause, this Court will apply New York's choice of law rules.

"Federal courts sitting in diversity in New York must apply New York's choice-of-law rules when determining the law that governs the contract." *Lehman Bros. Commercial Corp. v. Minmetals Int'l Non–Ferrous Metals Trading Co.,* No. 94 Civ. 8301, 2000 WL 1702039, at*11 (S.D.N.Y. Nov. 13, 2000); *see also Lund's Inc. v. Chemical Bank,* 870 F.2d 840, 845 (2d Cir. 1989). New York courts follow the test laid out in the Restatement (Second) of Conflicts of Laws § 187.

"Under New York law, a choice-of-law provision indicating that the *contract* will be governed by a certain body of law does not dispositively determine that law which will govern a claim of *fraud* arising incident to the contract." *Krock v. Lipsay*, 97 F.3d 640, 645 (2d Cir. 1996) (italics in original, internal citations omitted). In fact, "[u]nder New York law, [] tort claims are outside the scope of contractual choice-of-law provisions that specify what law governs construction of the terms of the contract, *even when the contract also includes a broader forum-selection clause*." *Fin. One Pub. Co. v. Lehman Bros. Special Fin.*, 414 F.3d 325, 335 (2d Cir. 2005) (internal citation omitted). The *Finance One Public* court revisited the *Krock* court's

statement that "[u]nder New York law, in order for a choice-of-law provision to apply to claims for tort arising incident to the contract, the express language of the provision must be 'sufficiently broad' as to encompass the entire relationship between the contracting parties," *Krock*, 97 F.3d at 645, and found that although "[p]resumably a contractual choice-of-law clause could be drafted broadly enough to reach such tort claims . . . , no reported New York cases present such a broad clause," *Fin. One Pub.* 414 F.3d at 335 (citing *Krock*, 97 F.3d at 645).

Therefore, as the claims arising out of the six agreements that constitute the Partnership Agreements all sound in tort, the choice-of-law provisions do not apply to those claims. The sole claim for breach of contract relates to the Confidentiality Agreement, which provides for the application of California law. As to the Confidentiality Agreement, the Court finds that the choice-of-law provision encompasses claims for breach of contract. Therefore, the Court will apply California law to that claim. Accordingly, the Court turns to determine the body of law properly applicable to the remaining claims.

"In New York, . . . the first question to resolve in determining whether to undertake a choice of law analysis is whether there is an actual conflict of laws." *Fieger v. Pitney Bowes Credit Corp.,* 251 F.3d 386, 393 (2d Cir. 2001) (internal quotation marks omitted). "An actual conflict exists where the applicable law from each jurisdiction provides differing rules that have the potential to affect the outcome of the case significantly." *Horton v. Greenwich Hosp.,* No. 12–CV–4436, 2014 WL 956468, at *2 n.1 (S.D.N.Y. Mar. 10, 2014).

"If no actual conflict exists, and if New York is among the relevant jurisdictions, the court may simply apply New York law." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 672 F.3d 155, 157 (2d Cir. 2012).

If, however, an actual conflict exists, then "[t]he law of the jurisdiction having the greatest interest in the litigation will be applied and the only facts or contacts which obtain significance in defining State interests are those which relate to the purpose of the particular law in conflict." *Schultz v. Boy Scouts of Am., Inc.*, 65 N.Y.2d 189, 197, 480 N.E.2d 679, 684 (N.Y. 1985) (internal citations and quotation marks omitted).

After requesting briefing from the parties on the issue, the parties agree that New York and California law do not differ on claims for fraud by intentional misrepresentation; fraud by failure to disclose material facts; or breach of a confidentiality agreement. Furthermore, the laws do not differ on requests for specific performance; injunctive relief; accounting, and constructive trust. Therefore, the Court will apply New York law as to those claims. *Licci*, 672 F.3d at 157.

However, the parties disagree as to whether a conflict exists between New York and California law with regard to rescissions of contracts based on fraudulent conduct, and which jurisdiction's laws should apply. The Plaintiffs did not address the conflict between the laws of the two jurisdictions regarding securities fraud and rescission of a written contract on the grounds of securities fraud. For their part, the Defendants claim that a conflict exists between New York and California regarding those two causes of action, and argue that New York law should apply. The Court turns to the three causes of action at issue to first determine whether a conflict of laws exists.

### 1. Rescission

As to rescission of a contract based on fraud, under California law, a party may unilaterally rescind a contract by:

> (a) [g]iving] notice of rescission to the party as to whom he rescinds; and
> (b) [r]estor[ing] to the other party everything of value which he has received from him under the contract or offer to restore the same upon condition that the other party do likewise, unless the latter is unable or positively refuses to do so.

CAL. CIV. CODE § 1691. The statute further states that "the service of a pleading in an action or proceeding that seeks relief based on rescission shall be deemed to be such notice or offer or both." *Id.* Under California law, "[t]he court does not rescind contracts but only affords relief based on a party's rescission." *Wong v. Stoler*, 237 Cal. App. 4th 1375, 1385, 188 Cal. Rptr. 3d 674, 681 (Cal. Ct. App. 2015), *as modified on denial of reh'g* (June 23, 2015)

> Under New York law,
>
> It is well established that a contract induced by fraudulent representation is voidable, and that the defrauded party has several remedies. On discovery of the fraud: (1) He or she may rescind the contract by promptly tendering back all that he or she has received under it. He or she may then bring an action at law upon the rescission to recover back what he or she has paid, or (2) defend an action brought against him or her on the contract, setting forth the fraud and rescission as a defense. (3) He or she may bring an action in equity for rescission. These remedies are based upon a disaffirmance of the contract, in which the party rescinding or desiring to rescind in effect says, you have induced me to enter into this contract by fraud. I offer you what I received. Give me back that which you received, or if that be impossible pay me its value. (4) He or she may affirm the contract and sue for his or her damages. (5) If sued upon the contract, he or she may counterclaim his or her damages.

*VisionChina Media Inc. v. S'holder Representative Servs., LLC*, 109 A.D.3d 49, 56, 967 N.Y.S.2d 338 (N.Y. App. Div. 2013) (internal ellipses, brackets, citation and quotation marks omitted). Furthermore, "[t]he remedy of rescission, moreover, lies in equity and is a matter of discretion" that lies with the court. *Symphony Space, Inc. v. Pergola Properties, Inc.*, 88 N.Y.2d 466, 485, 669 N.E.2d 799 (N.Y. 1996); *see also Maldonado v. Valsyn, S.A.*, No. 06 CIV. 15290 (RMB), 2009 WL 3094888, at *4 (S.D.N.Y. Sept. 23, 2009) ("Plaintiffs are not entitled to rescission because Plaintiffs have an adequate remedy at law in the form of damages for Defendants' alleged breaches of the Contracts. Where damages appear adequate rescission is inappropriate." (internal citations, quotation marks, and alterations omitted)), *aff'd*, 390 F. App'x 27 (2d Cir. 2010).

Therefore, it is clear that under California law, a contract is deemed rescinded immediately upon serving notice of such rescission and restoring the other party to its pre-contract state, while New York law requires a court to grant the equitable remedy of rescission. As the Defendants admitted in their initial memorandum of law in support of their motion to transfer the case to New York, "[r]escission under New York law requires an adjudication of the court. The parties may not bring about rescission by sending letters or even filing a case in court. . . . California law may be different on unilateral rescission . . . ." (Defs.' Mem. of Law in Supp. of Mot. to Transfer Venue (ECF No. 7-2) at 12–13).

While the Defendants now contend that "an actual conflict exists where the applicable law from each jurisdiction provides differing rules that have the potential to affect the outcome of the case significantly," (Defs.' Reply Brief Regarding the Choice of Law (ECF No. 53) at 3 (internal citation and quotation marks omitted)), the Second Circuit has explicitly disregarded this approach, *Fin. One Pub.*, 414 F.3d at 331 ("LBSF's argument hinges on its assumption, unsupported by any authority, that 'actual conflict' exists only where the choice of which rule to apply has been demonstrated to be 'outcome determinative.' This assumption is incorrect. Rather, the requirement is that the applicable law from each jurisdiction provides different substantive rules. The differences must be 'relevant' to the issue at hand, and must have a significant *possible* effect on the outcome of the trial." (internal citations, quotation marks, and alterations omitted)). Accordingly, the Court finds that there is a conflict between California and New York law regarding rescission of contracts based on fraud.

## 2. Securities Fraud and Rescission of Written Contract Based on Securities Fraud

California Corporations Code Section 25401, California's blue sky law, provides that:

> It is unlawful for any person to offer or sell a security in this state or buy or offer to buy a security in this state by means of any written or oral communication which

includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

CAL. CORP. CODE § 24501.

Section 25501 of that code provides a private right of action for those who buy or sell a security from a person who violates section 25401. It states that "[a]ny person who violates Section 25401 shall be liable to the person who purchases a security from him or sells a security to him, who may sue either for rescission or for damages . . . ." CAL. CORP. CODE § 25501.

In contrast, New York's blue sky law, N.Y. GEN. BUS. LAW ART. 23–A (the "Martin Act"), does not provide for a private right of enforcement. *CPC Int'l Inc. v. McKesson Corp.*, 70 N.Y.2d 268, 276, 514 N.E.2d 116, 118 (N.Y. 1987) ("In all the other States, except one, the Legislature has expressly recognized a private civil action for violations of [statutes prohibiting securities fraud]. Under the Martin Act, however, no private action has been expressly authorized. A majority of this court now holds that there is no cause of action impliedly created . . . ."). As a result, there is also no corresponding statute granting the right of rescission to victims of securities fraud.

The Court expressly asked the parties to brief the issue as to what happens to the Plaintiffs' statutory securities fraud claims due to the apparent conflict of law. The Plaintiffs skirted the issue entirely, and the Defendants conclusorily stated that there is a conflict of law, and that New York law must apply. However, the Defendants did not offer a solution as to what happens to the Plaintiffs' claims as a result of the conflict.

In any event, courts that have dealt with this issue have held that there is not in fact a conflict, because the securities laws of multiple jurisdictions can be applied in a single jurisdiction, and New York does not have any interest in precluding claims under other states' blue sky laws. *See Silvercreek Mgmt., Inc. v. Citigroup, Inc.*, 248 F. Supp. 3d 428, 455–56 (S.D.N.Y. 2017)

("[T]here is no blanket prohibition on the applicability of multiple state securities law to a single transaction. Courts in this District, considering this question, have found that, because New York has no interest in precluding claims like those brought by the plaintiff (even in the absence of its own cause of action), New York impliedly permits the application of the securities laws of other states. (internal citations and quotation marks omitted); *Fed. Hous. Fin. Agency v. Deutsche Bank AG*, 903 F. Supp. 2d 285, 291 (S.D.N.Y. 2012) ("Here, defendants posit a conflict between New York's Martin Act, which provides no private cause of action for violations of its provisions, and the securities statutes of Virginia and the District of Columbia, which do permit private suits. As already noted, however, the New York Court of Appeals has recently made clear that, although the Martin Act did not create a private right of action to enforce its provisions, it does not preclude a private plaintiff from bringing a securities-related claim rooted in some other source of law. Thus, because New York has no interest in precluding claims like those brought by the plaintiff, even if defendants were correct that choice-of-law analysis is appropriate here, their effort to obtain dismissal of the Blue Sky claims would fail."); *Chrysler Capital Corp. v. Century Power Corp.*, No. 91 Civ. 1937, 1992 WL 163006, at *2 (S.D.N.Y. June 24, 1992) ("[B]ecause application of multiple state securities laws to a single securities transaction does not present a conflict of laws issue, [the] argument that only New York law," and its lack of a private cause of action, "may apply to the transaction at issue is rejected.").

Courts in other circuits have similarly held that there is no conflict between the blue sky laws of different jurisdictions. *See In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*, No. 2:11-CV-10414 MRP, 2012 WL 1322884, at *2 (C.D. Cal. Apr. 16, 2012) ("If a transaction touches multiple states, it follows that multiple Blue Sky laws may apply simultaneously. The Court agrees with the majority view that a plaintiff may sue under the securities laws of several

18

states at once so long as the requirements of each state's law are met."); *United Heritage Life Ins. Co. v. First Matrix Investor Services,* No. CV 06–0496, 2009 WL 3229374, at *4 (D. Idaho Sept. 30, 2009) ("[M]ore than one state's securities laws can apply to a transaction."); *Barneby v. E.F. Hutton & Co.,* 715 F. Supp. 1512, 1536 (M.D. Fla. 1989) ("[N]o reason to apply a traditional conflicts of laws analysis" when suit was brought under a state Blue Sky law.); *Simms Inv. Co. v. E.F. Hutton & Co.,* 699 F. Supp. 543, 546 (M.D.N.C. 1988) ("[T]he securities laws of two or more states may be applicable to a single transaction without presenting a conflict of laws question."); *Lintz v. Carey Manor Ltd.,* 613 F. Supp. 543, 551 (W.D. Va. 1985) ("Just as the same act can violate both federal and state law simultaneously, or a state statute as well as state common law, so too can it violate several Blue Sky laws simultaneously.").

Therefore, the Court finds that there is no conflict between California and New York's blue sky laws because "New York has no interest in precluding claims like those brought by the plaintiff . . . ." *Fed. Hous. Fin.*, 903 F. Supp. 2d at 291. Accordingly, the Court will apply California's blue sky laws to the Plaintiffs' statutory securities fraud claims.

Accordingly the Court now turns to determine which laws apply to the Plaintiffs' request for rescission of the Six Partnership Agreements.

### 3. As to Which Jurisdiction Has the Greatest Interest in the Litigation

As rescission based on fraud is truly a remedy sought for tortious conduct, the Court looks to New York's interest analysis regarding tort actions.

"The New York Court of Appeals has held that 'the relevant analytical approach to choice of law in tort actions in New York' is the '[i]nterest test.'" *GlobalNet Financial.Com, Inc. v. Frank Crystal & Co.*, 449 F.3d 377, 384 (2d Cir. 2006) (quoting *Schultz,* 480 N.E.2d at 684 (alteration in original)). Under this test, courts "seek to apply the law of the jurisdiction with the

most significant interest in, or relationship to, the dispute." *White Plains Coat & Apron Co. v. Cintas Corp.,* 460 F.3d 281, 284 (2d Cir. 2006) (quoting *Lazard Freres & Co. v. Protective Life Ins. Co.,* 108 F.3d 1531, 1539 (2d Cir. 1997)). The states' interests are defined primarily by "the parties' domiciles and the locus of the tort." *Schultz,* 480 N.E.2d at 684. New York tort laws are either considered conduct-regulating or loss-allocating depending on their primary purposes. *GlobalNet Financial.Com*, 449 F.3d at 384. "If conflicting conduct-regulating laws are at issue, the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders." *White Plains Coat & Apron Co.,* 460 F.3d at 284 (quoting *Cooney v. Osgood Mach, Inc.,* 612 N.E.2d 277, 280 (N.Y. 1993)).

"[W]here [wrongful conduct and injury] do not [take place in the same jurisdiction], it is the place of the allegedly wrongful conduct that generally has superior 'interests in protecting the reasonable expectations of the parties who relied on [the laws of that place] to govern their primary conduct and in the admonitory effect that applying its law will have on similar conduct in the future.'" *Licci*, 739 F.3d at 50–51 (third alteration in original) (quoting *Schultz,* 480 N.E.2d at 684-85).

Here, although the Plaintiffs suffered economic injury in California, *see Krock*, 97 F.3d at 646 (stating that for fraud claims, the injury occurs where the victims sustained economic loss (internal citations omitted)), the allegedly wrongful conduct took place in New York. The Defendants' alleged wrongful conduct is their misstatements, which were all apparently made in New York. The Defendants' misstatements allegedly induced the Plaintiff to sign the contracts, which were signed in New York. Therefore, New York has the greater interest in protecting the litigants here. *See Licci*, 739 F.3d at 50–51.

Accordingly, the Court applies the law of New York State to the Plaintiff's request for rescission of the Partnership Agreements.

## C. Application to the Plaintiffs' Claims

### 1. As to the Plaintiff's Claims for Fraud

The Defendants contend that the Plaintiffs have failed to plead fraud with sufficient particularity to meet the requirements of Rule 9.

FED. R .CIV. P. 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Under Rule 9(b), the complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1175 (2d Cir. 1993).

While the Plaintiffs have clearly specified which statements were allegedly fraudulent and alleged why they were fraudulent, they have failed to "identify the speaker," or "state where and when the statements were made." *Mills*, 12 F.3d at 1175. The paragraph of the complaint that enumerates the alleged misstatements merely states that "prior to the execution of the [agreements], [the] Defendants intentionally made the following material misrepresentations to Plaintiff Mattes for the purpose of enticing her and the other Plaintiffs to enter into the Six Agreements . . . ." (Am. Compl. ¶ 20).

In the following sixteen subparagraphs, the Plaintiffs lay out the alleged misstatements, but never once identify the speaker, or state when or where the statements were made. The agreements were executed in June of 2012, and the parties first met in December of 2011. During those six months, the parties apparently engaged in negotiations. In their memorandum in opposition to the motion to dismiss, the Plaintiffs argue that these allegations are sufficient, but in truth, point out

how they are deficient.  The Plaintiffs argue that the speakers are either "Michael Rose . . . and/or [] Harriet Rose" and that the statements were made "in December 2011; and [] between January 2012 and June 29, 2012."  (Pls.' Mem. in Opp. to Mot. to Dismiss (internal citations omitted)).

First, the Court notes that the complaint does not in fact state specifically that any of the misstatements were made in December 2011.  The complaint does not assign a month to any of the misstatements; instead, they are grouped together in time to a period of six to seven months.  Furthermore, the complaint never identifies whether it was Michael Rose or Harriet Rose who made the statement; or whether it was both of them.  Finally, the Plaintiffs do not even attempt to argue that they have adequately alleged where the statements were made.

These allegations are wholly inadequate under federal law.

When multiple defendants are alleged to have engaged in the fraud, and made material misrepresentations, the complaint must clearly state which defendants made which statements.  *See Mills*, 12 F.3d at 1175 ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.'"); *Luce v. Edelstein*, 802 F.2d 49, 54 (2d Cir. 1986) (upholding district court's dismissal of certain claims for failure to allege fraud with sufficient particularity, stating that "[w]ith regard to connecting particular representations to particular defendants, the complaint alleges numerous representations attributed only to the defendants."); *Goldman v. Belden,* 754 F.2d 1059, 1070 (2d Cir. 1985) ("The allegations must be specific enough to provide each defendant with notice of his alleged wrongful conduct."); *Aronov v. Mersini*, No. 14-CV-7998 PKC, 2015 WL 1780164, at *4 (S.D.N.Y. Apr. 20, 2015) (dismissing the fraud allegations because, *inter alia*, "the Complaint . . . fails to allege which defendants made fraudulent communications to which customers" (internal citations omitted)); *Fisher v. APP Pharm., LLC*, 783 F. Supp. 2d 424, 433 (S.D.N.Y. 2011) ("Further, the SAC makes all allegations

against 'Defendants.' Plaintiff argues that Defendants had sufficient notice of the claims against them because the identity of each Defendant is defined in the SAC. This does not satisfy the requirements of 9(b). The SAC fails to differentiate among the named Defendants in each allegation and thus fails to inform each defendant of the circumstances surrounding the fraudulent conduct with which he individually stands charged."); *Doehla v. Wathne Ltd., Inc.,* 98–cv–6087 (CSH), 1999 WL 566311, at *17 (S.D.N.Y. Aug. 3, 1999) (dismissing fraud claims for lack of particularity where the complaint "improperly attributes the alleged fraudulent statements to [three defendants] . . . without linking each defendant to a particular statement"); *Protter v. Nathan's Famous Sys., Inc.*, 904 F. Supp. 101, 106 (E.D.N.Y. 1995) (Spatt, J.) ("If multiple defendants are involved in the alleged fraud, it is especially important that the fraud be particularized as to each one of them." (internal citations omitted)).

Furthermore, it is insufficient to state that the misrepresentations occurred over a six to seven month period. *See Luce*, 802 F.2d at 54 (finding the allegations insufficiently particularized where the complaint stated that "[t]hese further representations occurred . . . both before the Closing and thereafter in connection with further solicitation of limited partners." (internal footnote omitted); *Aronov*, 2015 WL 1780164, at *4 ("The Complaint, which specifies an approximate eight-month period during which the statements were made, lacks particularity with regard to the timeframe of the alleged misrepresentations." (internal citations omitted); *Fisher*, 783 F. Supp. 2d at 433 (dismissing the fraud allegations because, *inter alia*, "[t]he SAC fails to allege when the fraud occurred and where the fraud took place, and instead just asserts the fraud too place at 'all times mentioned herein.'" (internal citation to the record omitted)); *Alnwick v. European Micro Holdings, Inc.,* 281 F. Supp. 2d 629, 641 (E.D.N.Y. 2003) (dismissing a fraud claim where amended complaint alleged that fraudulent statements were made between May 1997 and August

1997, in part, because a "vague four-month period of time is insufficient to satisfy the pleading standards of Rule 9(b)"); *Skylon Corp. v. Guilford Mills, Inc.,* 93–cv–5581 (LAP), 1997 WL 88894, at *2 (S.D.N.Y. Mar. 3, 1997) ("Although plaintiff outlines a four-month window during which all of the misrepresentations occurred, this does not satisfy the pleading standard of Rule 9(b)."); *Sendar Co. v. Megaware Inc.*, 705 F. Supp. 159, 161 (S.D.N.Y. 1989) ("The allegations fail to specify the date on which fraudulent statements were made, merely alleging that statements were made some time during a two month period.").

Therefore, the Plaintiffs have failed to state their claims for fraud with sufficient particularity. Accordingly, the Defendants' motion to dismiss the Plaintiffs' claims for fraud by intentional misrepresentation and fraud based on a failure to disclose material facts is granted.

Furthermore, as rescission is a remedy, not a cause of action, and the rescission cause of action is based upon the Defendants' purportedly fraudulent conduct, that cause of action is dismissed as well. *See Barnett v. Countrywide Bank, FSB*, 60 F. Supp. 3d 379, 394 (E.D.N.Y. 2014) ("To the extent that the Plaintiffs' claim for rescission in Count Ten does not constitute its own cause of action, but rather is a request for relief based on other causes of action in the Complaint—namely, TILA violations and fraudulent concealment—the Count must still be dismissed. Because such underlying causes of action have been dismissed, the request for rescission in Count Ten will likewise be dismissed." (internal citation and quotation marks omitted)).

### 2. As to the Plaintiffs' Claim for Breach of Contract

The Defendants move to dismiss the Plaintiffs' claims for breach of contract and their requested remedies for specific performance and injunctive relief based solely on the ground that "they involve the pre-deal confidentiality agreement [and rely] on the assumption [that] the six

agreements have been rescinded for fraud such that the confidentiality agreement sprang back to life." (Defs.' Mem. in Supp. of Mot. to Dismiss at 10). Here, the Court disagrees.

The Plaintiffs' claim for breach of contract is based upon their allegation that, pursuant to the terms of the Confidentiality Agreement, they sent written notice to the Defendants requesting that they return all confidential information to them, and the Defendants have failed to comply with that requirement.

"[T]he elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821, 250 P.3d 1115, 1121 (Cal. 2011) (internal citation omitted). The Plaintiffs adequately allege each of those elements in their claim. The Plaintiffs provided confidential information to the Defendants, and eventually gave notice to them that they wanted said information returned. Pursuant to the Confidentiality Agreement, upon receiving that notice, the Defendants were to "execute a certificate, pre-approved by the other party, certifying delivery to the other party or destruction of all Confidential Information . . . ." (Confidentiality Agreement ¶ 4). The Defendants have apparently not complied with that requirement, and are thus allegedly in breach. Therefore, the Plaintiffs have alleged sufficient facts to plausibly plead a claim for breach of contract. Accordingly, the Defendants' motion to dismiss that cause of action, and the Plaintiffs' desired remedies, is denied.

### 3. As to the Plaintiffs' Statutory Claims for Securities Fraud

The Defendants similarly contend that the Plaintiffs' claims brought pursuant to California's blue sky laws fail because they rely on the insufficiently plead fraudulent misrepresentations. Furthermore, they argue that California law requires privity.

The Court need not address whether California law requires privity, because the Plaintiffs' statutory claims for fraud fail for the same reasons as their common law fraud claims. They have failed to identify which Defendants made which statements, and when and where those statements were made. Pursuant to section 25401:

> It is unlawful for any person to offer or sell a security in this state, or to buy or offer to buy a security in this state, by means of any written or oral communication that includes an untrue statement of a material fact or omits to state a material fact necessary to make the statements made, in the light of the circumstances under which the statements were made, not misleading.

CAL. CORP. CODE § 25401. A defendant can only be liable under 25501 if that person "violates Section 25401 . . . ." CAL. CORP. CODE § 25501.

"The Plaintiff has failed to plead with requisite particularity factual and evidentiary allegations which plausibly suggest Defendants made misleading statements or omissions, a requisite element in a section 25401 claim." *Wallack v. Idexx Labs., Inc.*, No. 11CV2996-GPC WVG, 2013 WL 1562523, at *10 (S.D. Cal. Apr. 11, 2013).

Accordingly, the Defendants' motion to dismiss the Plaintiffs' claims brought under sections 25401 and 25501 of the California Corporations Code is granted.

### 4. As to the Plaintiffs' Request for an Accounting and a Constructive Trust

The Defendants contend that the causes of action for accounting and constructive trust are remedies that rely on the fraud allegations as the basis of those claims, and therefore must be dismissed.

The elements required for the equitable remedies of accounting and constructive trust do not, in any way, mirror the elements of the Plaintiffs' other causes of action. See *United States v. Coluccio,* 51 F.3d 337, 340 (2d Cir. 1995) ("Generally, New York law requires that a person establish four elements before a court will impose a constructive trust: (1) a confidential or

fiduciary relationship; (2) a promise, express or implied; (3) a transfer of the subject res made in reliance on that promise; and (4) unjust enrichment."); *Assoc. Mortg. Bankers, Inc. v. Calcon Mut. Mortg. LLC*, 159 F. Supp. 3d 324, 338 (E.D.N.Y. 2016) ("To state a claim for an accounting under New York law, a plaintiff must establish: (1) relations of a mutual and confidential nature; (2) money or property entrusted to the defendant imposing upon him a burden of accounting; (3) that there is no adequate legal remedy; and (4) in some cases, a demand for an accounting and a refusal.").

The Defendants have not addressed any of the elements for either type of request for relief, and therefore, the Defendants' motion to dismiss the causes of action for an accounting and the imposition of a constructive trust is denied.

**D. As to the Plaintiff's Request for Leave to Amend**

Finally, in their legal memorandum, the Plaintiffs state that they "should be given leave to amend since the current [c]omplaint was drafted for, and filed in, a California [c]ourt and not [f]ederal [c]ourt; and Plaintiffs have not had a prior opportunity to amend this [c]omplaint since the case was removed . . . ." (Pls.' Mem. in Opp. at 20). The Plaintiffs did not attach a proposed amended pleading to their request, or state how they would amend the complaint to repair the deficiencies identified above. The Court denies the Plaintiff's request for leave to amend the complaint at this juncture, as it is procedurally improper.

Courts have held that a "bare request to amend a pleading" contained in a brief, which does not also attach the proposed amended pleading, is improper under FED. R. CIV. P. 15. See *Malin v. XL Capital, Ltd.*, 312 F. App'x 400, 402–03 (2d Cir. 2009) ("[W]e have not required district courts to provide[] detailed explanations when denying cursory or boilerplate requests for [requests to amend a complaint], made solely in a memorandum in opposition to a motion to dismiss. (citing

*In re Tamoxifen Citrate Antitrust Litig.,* 466 F.3d 187, 220 (2d Cir. 2006) ("It is within the [district] court's discretion to deny leave to amend implicitly by not addressing the request [for leave to amend] when leave is requested informally in a brief filed in opposition to a motion to dismiss.").

Accordingly, the Court finds that the Plaintiffs' request is procedurally improper under FED. R. CIV. P. 15 and, in its discretion, denies the Plaintiffs' motion to amend their complaint for a second time on that basis without prejudice and with leave to renew as a formal motion.

### III. CONCLUSION

For the reasons stated above, the Defendants' motion to dismiss the Plaintiffs' complaint pursuant to Rule 12(b)(6) is granted in part, and denied in part. It is granted to the extent that the Plaintiffs' statutory and common law claims for fraud, and the request for rescission based on fraud are dismissed. Those claims are dismissed without prejudice. It is denied to the extent that the Plaintiffs' claim for breach of contract, and request for injunctive relief, accounting, and constructive trust survive.

The Plaintiffs' bare request for leave to amend is denied without prejudice as procedurally improper. The Plaintiffs are granted leave to refile their request as a formal motion. Such motion must be made within thirty days of this order.


It is **SO ORDERED:**

Dated: Central Islip, New York

      April 23, 2018

                            ___*/s/ Arthur D. Spatt*___

                            ARTHUR D. SPATT

                        United States District Judge