**FILED**
**CLERK**

4:04 pm, Jan 14, 2019

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
HATTERAS ENTERPRISES, INC., a
California Corporation; MADMACK LLC, a
California Limited Liability Company; and
DEBRA MATTES, an individual,

                    Plaintiffs,

                -against-

FORSYTHE COSMETIC GROUP, LTD;
COLOR CLUB, LLC, a New York Limited
Liability Company; HARRIET ROSE 2009
IRREVOCABLE TRUST; HARRIET ROSE, an
individual; and MICHAEL ROSE, an individual,

                    Defendants.
--------------------------------------------------------X

**MEMORANDUM OF**
**DECISION & ORDER**
2:15-cv-05887 (ADS)(ARL)

<u>**APPEARANCES:**</u>

**Yourist Law Corporation APC**
*Attorneys for the Plaintiffs*
11111 Santa Monica Boulevard Suite 100
Los Angeles, CA 90025-3333
        By:   Daniel J. Yourist, Esq.,
                 Bradly J. Yourist, Esq., Of Counsel.

**Kilka Parrish and Bigelow**
*Attorneys for the Plaintiffs*
133 N Altadena Drive Suite 403
Pasadena, CA 91107
        By:   Franklin Thomas Bigelow, Jr., Esq., Of Counsel.

**Michael Nanagano Law Offices**
*Attorneys for the Plaintiffs*
555 West Fifth Street Suite 3100
Los Angeles, CA 90013
        By:   Michael A J Nangano, Esq., Of Counsel.

**Robert M. Silverman**
*Co-Counsel for the Plaintiffs*
269 South Beverly Drive, Suite 1358 Beverly Hills, CA 90212
        By:   Robert M. Silverman, Esq., Of Counsel

1

**Osborn Law. P.C.**
*Attorneys for the Defendants*
295 Madison Avenue 39th Floor
New York, NY 10017
      By:    Daniel Adam Osborn, Esq., Of Counsel.

**Woollacott LLP**
*Attorneys for the Defendants*
10850 Wilshire Boulevard Suite 825
Los Angeles, CA 90024
      By:    Jay A Woollacott, Esq., Of Counsel.

**SPATT, District Judge**:

The plaintiffs Hatteras Enterprises Inc. ("Hatteras"), Debra Mattes ("Mattes"), and MadMack LLC ("MadMack") (collectively, the "Plaintiffs") brought this action against the defendants Forsythe Cosmetic Group, Ltd ("Forsythe"), Harriet Rose, Michael Rose, Color Club, LLC ("Color Club"), Harriet Rose 2009 Irrevocable Trust (the "Trust"), and certain as yet unnamed Does (collectively, the "Defendants"), alleging, *inter alia*, fraud and breach of contract.

On April 23, 2018, the Court granted in part, and denied in part, a motion by the Defendants to dismiss the complaint pursuant to Federal Rule of Civil Procedure ("FED. R. CIV. P." or "Rule") 12(b)(6). ECF 54 (the "Order"). In relevant part, the Court dismissed the Plaintiffs' statutory and common law claims for fraud, as well as the Plaintiffs' request for rescission based on fraud, but granted the Plaintiffs leave to file a motion to amend their complaint. The Court denied the motion to dismiss with respect to the Plaintiffs' claims for breach of a confidentiality agreement and the Plaintiffs' request for injunctive relief, accounting, and constructive trust. For a full recitation of the facts and the procedural posture of the case, the Court refers the parties to the Order.

Presently before the Court is the Plaintiffs' motion, pursuant to Rule 15, to amend the complaint. Relevant for the purposes of this motion, the Proposed Second Amended Complaint (the "PSAC") asserts several causes of action relating to the formation of Solar Club, LLC ("Solar Club"),

a joint venture created as a vehicle to sell the Plaintiffs' nail polish products. The Plaintiffs, through Madmack, and the Defendants, through the Trust, are each 50% owners of Solar Club. ECF 55-1 ¶ 40. Although the parties co-own Solar Club, the Defendants possess operational control of the entity via Forsythe, which is the sole and exclusive manager of Solar Club. *Id.* ¶ 6. Harriet Rose is the President and controlling owner of Forsythe. *Id.* ¶ 8. Michael Rose is an officer of Forsythe, and the Chief Operating Officer of Solar Club. *Id.* ¶ 9.

Based on the Defendants' conduct during and after the formation of Solar Club, the Plaintiffs seek to add the following causes of action to those which survived the Order:

- Count One – Breach of an April 2012 joint venture agreement between Forsythe, Michael Rose, Harriet Rose, the Trust and Hatteras and Mattes (the "Joint Venture Agreement") by the Plaintiffs against the Defendants;

- Count Two – Breach of fiduciary duty by Hatteras and Mattes against Forsythe, Michael Rose, Harriet Rose, and the Trust;

- Count Three – Breach of a June 29, 2012 licensing agreement between Hatteras and Madmack (the "Licensing Agreement") and a June 29, 2012 assignment and assumption agreement between Madmack and Solar Club (the "Assignment Agreement") by Hatteras and Mattes against Forsythe;

- Count Four – Breach of a June 29, 2012 operating agreement between Madmack and the Trust and Forsythe (the "Operating Agreement") by Madmack against Forsythe;

- Count Five – Breach of fiduciary duty by Madmack against Forsythe;

- Count Six – Breach of a June 29, 2012 services agreement between Forsythe and Solar Club (the "Services Agreement") by Madmack against Forsythe;

- Count Seven – Conversion by the Plaintiffs against the Defendants;

- Count Eight – Conspiracy to commit and aiding and abetting breach of fiduciary duty by the Plaintiffs against the Defendants;

- Count Nine – Fraudulent inducement by the Plaintiffs against the Defendants;

- Count Ten – Securities fraud in violation of California Corporations Code §25401, *et seq.*, by the Plaintiffs against the Defendants;

- Count Sixteen – Conspiracy to commit and aiding and abetting fraud by the Plaintiffs against the Defendants;

ECF 55-1.

For the following reasons, the Court grants the Plaintiffs' motion with regards to Counts One, Two, Three, Seven, and Nine, but denies the Plaintiffs' motion with regards to Counts Four, Five, Six, and Eight. The Court grants, in part, and denies, in part, the Plaintiffs' motion with regards to Counts Ten and Sixteen.

## I.  DISCUSSION

### A. THE LEGAL STANDARD

According to Rule 15(a), a party may amend a pleading "by leave of court or by written consent of the adverse party ... [L]eave shall be freely given when justice so requires [.]" FED. R. CIV. P. 15(a). Courts have liberally interpreted this Rule. *See D.C.R. Trucking & Excavation, Inc. v. Aetna Cas. And Sur. Co.*, No. 96-cv-3995, 2002 WL 32096594, at *8 (E.D.N.Y. Oct. 31, 2002). The power to amend a pleading is within the discretion of the District Court. *See Gursky v. Northwestern Mut. Life Ins. Co.*, 139 F.R.D. 279, 281 (E.D.N.Y. 1991) (citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962)); *see also Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995).

Amendments should only be denied for legitimate reasons such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments

4

previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008). "The Rule reflects two of the most important principles behind the Federal Rules: pleadings are to serve the limited role of providing the opposing party with notice of the claim or defense to be litigated ... and mere technicalities should not prevent cases from being decided on the merits." *D.C.R. Trucking & Excavation, Inc.*, 2002 WL 32096594, at \*8 (quoting *Monahan v. N.Y. City Dep't of Corrections*, 214 F.3d 275, 283 (2d Cir. 2000).

## B. As to Whether the Proposed Amendments Are Futile.

"[L]eave to amend will be denied as futile only if the proposed new claim cannot withstand a 12(b)(6) motion to dismiss for failure to state a claim, *i.e.*, if it appears beyond doubt that the plaintiff can plead no set of facts that would entitle him to relief." *Milanese v. Rust–Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001) (citing *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991)). It is well-established that a complaint should be dismissed under Fed.R.Civ.P. 12(b)(6) only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). Indeed, the issue on a motion to dismiss is "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Todd v. Exxon Corp.*, 275 F.3d 191, 198 (2d Cir. 2001) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). "'[D]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949–50, 173 L.Ed.2d 868 (2009)).

5

In deciding a motion to dismiss, the Court must accept the material facts alleged in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Ashcroft*, 129 S.Ct. 1937 at 1949–50; *Zinermon v. Burch*, 494 U.S. 113, 118, 110 S.Ct. 975, 979, 108 L.Ed.2d 100 (1990); *In re NYSE Specialists Secs. Litig.*, 503 F.3d 89, 91 (2d Cir.2007). However, "that 'tenet' 'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris*, 572 F.3d at 72 (quoting Iqbal, 129 S.Ct. at 1949). As such, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and ... determine whether they plausibly give rise to an entitlement of relief." *Iqbal*, 129 S.Ct. at 1950. Only if this Court is satisfied that "the complaint cannot state any set of facts that would entitle the plaintiff to relief will it grant dismissal pursuant to Rule 12(b)(6)." *Hertz Corp. v. City of N.Y.*, 1 F.3d 121, 125 (2d Cir.1993).

The Court finds that Counts One, Two, Three, Seven, and Nine adequately state a claim, but that Counts Four, Five, Six, and Eight do not. Counts Ten and Sixteen, in part, state a claim and, in part, fail to do so.

### 1. As to Whether the Fraud Claims Satisfy Rule 9(b).

Rule 9(b) modifies the liberal pleading standard normally used in motions to dismiss when the complaint raises claims of fraud. While Rule 8(a) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a), a plaintiff asserting fraud must "state with particularity the circumstances constituting fraud or mistake." Fed.R.Civ.P. 9(b). Rule 9(b) is satisfied when the complaint specifies "the time, place, speaker, and content of the alleged misrepresentations;" how the misrepresentations were fraudulent; and the details that "'give rise to a strong inference that the defendant[] had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth.'" *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir.2013) (quoting *Caputo v. Pfizer, Inc.*, 267 F.3d 181, 191 (2d Cir.2001)).

In the Order, the Court dismissed the fraud claims, in part, because the Plaintiffs never identified the speakers of the alleged misstatements. The Defendants contend that the PSAC contains the same deficiency. However, the PSAC specifically alleges that Michael Rose made the misrepresentations to Mattes in a December 2011 telephone call and repeated the misrepresentations at a January 29, 2012 meeting and in an April 13, 2012 e-mail summarizing a term sheet. The PSAC also alleges that Harriet Rose attended the January 29, 2012 meeting and confirmed the veracity of Michael Rose's misrepresentations. ECF 55-1 ¶ 63. These allegations adequately address the problems with the First Amended Complaint identified in the Order by spelling out the time, location, and speaker of the misrepresentations.

In other words, the PSAC provides the Defendants sufficient notice of the nature of their alleged participation in the fraud, so that the absence of additional information does not hamper their defense. *See Shema Kolainu-Hear Our Voices v. ProviderSoft, LLC*, 832 F. Supp. 2d 194, 210 (E.D.N.Y. 2010) (finding Rule 9(b) satisfied where complaint identified the speaker and pinpointed that the statements took place at a meeting in August 2007 and subsequent meetings); *Gabriel Capital, L.P. v. NatWest Fin., Inc.*, 94 F. Supp. 2d 491, 504 (S.D.N.Y. 2000) ("Plaintiffs have identified the specific date of the meeting, at least one of the representatives from both NatWest and McDonald who attended the meeting, and the specific statements alleged to be fraudulent. Given this level of specificity, plaintiffs have placed NatWest and McDonald on notice and pleaded their claim with sufficient particularity, despite their inability to specifically identify the speaker of each statement."); *Innovation Ventures, LLC v. Ultimate One Distrib. Corp.*, No. 12-cv-5354, 2014 WL 1311979, at *5 n.4 (E.D.N.Y. Mar. 28, 2014) (rejecting argument that allegations about comments made on a telephone conference call failed to convey who allegedly made specific fraudulent statements by "lumping together" the defendants).

The Defendants attempt to contradict these statements by claiming that no term sheet exists, and that Mattes never engaged in substantive discussions about a possible deal with Harriet and Michael Rose. However, this argument only relates to the truthfulness of the allegations. As the Court must take all the allegations in the PSAC as true, even under Rule 9(b), it is satisfied with the Plaintiffs' identification of "who" made the misrepresentations. *See Local 875 I.B.T. Pension Fund v. Pollack*, 992 F. Supp. 545, 561 (E.D.N.Y. 1998) ("In reviewing motions to dismiss under Federal Rules of Civil Procedure 9(b) and 12(b)(6), a court is bound to accept as true all factual allegations of the complaint, and draw all inferences in favor of the pleader."); *M.E.S., Inc. v. Safeco Ins. Co. of Am.*, No. 10-cv-02798, 2014 WL 2931398, at *9 (E.D.N.Y. June 27, 2014) ("[C]ourts reviewing the sufficiency of a complaint take all factual allegations as true and draw all reasonable inferences in the plaintiff's favor. This is equally true in the context of fraud-claim allegations which are subject to FRCP 9(b) pleading requirements."); *State Farm Mut. Auto. Ins. Co. v. Valery Kalika*, No. 04-cv-4631, 2006 WL 6176152, at *12 (E.D.N.Y. Mar. 16, 2006) (denying motion to dismiss under Rule 9(b) standard where the argument merely "dispute[d] the factual allegations of the Complaint . . . because the Court is required on a motion to dismiss to accept as true all allegations in the Complaint").

In addition, the Defendants argue that the PSAC fails to explain "why" the statements at issue were fraudulent. The alleged misrepresentations are identical to those in the First Amended Complaint. *Compare* ECF 1-3 ¶ 20, *with* ECF 55-1 ¶ 63. The Court already found that the same allegations in the First Amended Complaint "clearly specified which statements were allegedly fraudulent and alleged why they were fraudulent." ECF 54 at 21. It finds no occasion for revisiting this finding.

Therefore, the Court grants the Plaintiffs' motion to amend with regard to Count Nine.

## 2. As to Whether the Plaintiffs Adequately Pled a Section 25401 Claim Against Harriet and Michael Rose.

The Defendants argue that the Court should dismiss the Section 25401 claim against Harriet Rose and Michael Rose, as well as the claims asserted by Hatteras and Mattes, because the

only parties to the acquisition of the 50% interest in Solar Club were MadMack, Forsythe, and the Trust. According to the Defendants, Section 25401 requires contractual privity. Therefore, they believe that actions cannot be maintained against individuals and/or entities who were not parties to the underlying acquisition.

Section 25401 of the California Corporations Code makes it unlawful for "any person to offer or sell a security ... by means of any written or oral communication that includes an untrue statement of a material fact or omits to state a material fact necessary to make the statements made, in the light of the circumstances under which the statements were made, not misleading." Section 25501 creates a private right of action for any "person who purchases a security" from "[a]ny person who violates Section 25401." Section 25504 provides in turn that "[e]very person who directly or indirectly controls a person liable under Section 25501 ... [and] who materially aids in the act or transaction constituting the violation ... are also liable jointly and severally with and to the same extent as such person."

Although the Defendants are correct that collecting damages for violation of Section 25401 requires privity between the plaintiff and the defendant, they are incorrect in applying this point of law to Harriet and Michael Rose. As owners and officers of Forsythe, ECF 55-1 at ¶¶ 8–9, Harriet and Michael Rose are jointly and severally liable for Forsythe's conduct. *See Siegal v. Gamble*, No. 13-cv-03570, 2015 WL 4734741, at *5 (N.D. Cal. Aug. 10, 2015) ("As long as liability of a primary violator under section 25401 is established with the privity section 25501 requires, privity of plaintiffs with secondary violators need not be shown in order to state a claim under sections 25504 and 25504.1."). In other words, due to their direct and/or indirect control of Forsythe, they cannot escape liability for Forsythe's violations merely because they were not parties to the underlying agreements in their individual capacity. *See Balkowitsch v. D & M Dev., Inc.*, No. 15-

9

cv-00196, 2015 WL 3403083, at *3 (E.D. Cal. May 27, 2015) (denying motion to dismiss against president of corporation alleged to violate section 25401); *Yee v. NIVS IntelliMedia Tech. Grp.*, No. 11-cv-8472, 2012 WL 12886829, at *3 (C.D. Cal. Sept. 7, 2012) (denying motion to dismiss against officers of corporation alleged to violate section 25401).

The cases cited by the Defendants are inapposite, because they involve the conduct of agents of the entity with no direct or indirect control over the entity, such as a broker-dealer. *See Apollo Capital Fund, LLC v. Roth Capital Partners, LLC*, 158 Cal. App. 4th 226, 253, 70 Cal. Rptr. 3d 199, 221 (2007) ("The investors purchased their securities from eNucleus, not from Roth, which acted as eNucleus's placement agent. Consequently, Roth cannot be civilly liable for a violation of section 25401."); *Jackson v. Fischer*, 931 F. Supp. 2d 1049, 1064 (N.D. Cal. 2013) (finding plaintiff failed to state a claim under Section 25504 because complaint lacked "a viable claim of primary liability" because the claims against the director and officer defendants were based solely on statements of a broker dealer which were not false or misleading).

However, the Court agrees with the Defendants regarding the claims asserted by Hatteras and Mattes. As the purchaser of the securities, the only party with privity necessary to assert a Section 25401 claim is Madmack. Consequently, Hatteras and Mattes lack the standing required by the statute. *See Scognamillo v. Credit Suisse First Boston LLC*, No. 03-cv-2061, 2005 WL 645446, at *11 (N.D. Cal. Mar. 21, 2005) (dismissing Section 25401 claim where plaintiffs "have not alleged that any CSFB Defendant sold Netcentives shares to Plaintiffs, and the privity element is therefore lacking").

Therefore, the Court grants, in part, and denies, in part, the Plaintiffs' motion with regards to Count Ten.

### 3.  As to Whether the Plaintiffs Adequately Pled Breach of Contract.

Under New York law, to assert a breach of contract claim, a plaintiff must establish "(1) the existence of a contract; (2) that the plaintiff has performed his or her obligations under the contract; (3) that the defendant failed to perform his or her obligations thereunder; and (4) that plaintiff was thereby damaged." *Brooklyn 13th Street Holding Corp. v. Nextel of New York, Inc.*, 11-cv-1048, 2011 WL 6945862, at *3 (E.D.N.Y. Dec. 30, 2011) (citing *Crowley v. VisionMaker, LLC*, 512 F.2d 144, 151 (E.D.N.Y. 2007)); *accord Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011); *Palmetto Partners, L.P. v. AJW Qualified Partners, LLC*, 83 A.D.3d 804, 806, 921 N.Y.S.2d 260, 264 (2d Dept. 2011). The PSAC adequately alleges breach of contract claims relating to the Joint Venture, Licensing and Assignment Agreements, but fails to state a claim regarding the Services and Operating Agreements.

#### a.  As to the Joint Venture Agreement.

The Defendants claim that the Plaintiffs cannot state a claim for breach of the Joint Venture Agreement because, in their opinion, no such agreement exists. "To show that an enforceable contract existed, the claimant must plead facts surrounding the formation of the contract such as the date the parties entered into the contract, the major terms of the contract, the parties to the contract, and that the party to be bound assented to the contract." *Fuji Photo Film U.S.A., Inc. v. McNulty*, 669 F. Supp. 2d 405, 412 (S.D.N.Y. 2009). Here, the PSAC alleges that Forsythe, Michael and Harriet Rose, the Trust, Hatteras, and Mattes agreed to a joint venture partnership by executing a term sheet in or about April 2012. ECF 55-1 ¶¶ 24–25. According to the PSAC, the parties effectuated the Joint Venture Agreement as a vehicle to manufacture and sell Mattes' color changing nail polish on an exclusive basis. *Id.* ¶ 24. Further, the PSAC lays out the essential terms of the Joint Venture Agreement. *Id.* ¶ 25. Given that these allegations more than adequately allege

11

the existence of a contract, the Defendants' conclusory assertions that no such contract existed cannot support a motion to dismiss.

Therefore, the Court grants the motion to amend with regards to Count One. For this reason, the Court also grants the Plaintiffs' motion to amend regarding Count Two, because the Defendants' only opposition to this claim stems from their contention that the parties never entered into a joint venture.

> b.   *As to the Licensing and Assignment Agreements.*

The Defendants argue that the Plaintiffs cannot allege breaches of the Licensing and Assignment Agreements, because Forsythe is not a party to the agreements. Specifically, the Licensing Agreement is between Hatteras and MadMack, and the Assignment Agreement is between MadMack and Solar Club. The Plaintiffs, on the other hand, argue that a viable claim against Forsythe exists for breach of these agreements, because Forsythe utilized its position as the sole manager and controlling entity of Solar Club to cause Solar Club's breaches.

Generally, parent and subsidiary corporations are treated as separate legal entities, and a contract by one does not legally bind the other. *See Carte Blanche (Singapore), Pte, Ltd. v. Diners Club Int'l*, 2 F.3d 24, 26 (2d Cir.1993); *Gmerek v. Scrivner, Inc.*, 221 A.D.2d 991, 634 N.Y.S.2d 299, 299 (App.Div. 4th Dep't.1995) ("As a general rule, a parent corporation is not liable for the acts of a subsidiary.") (citations omitted). Courts in New York are reluctant to disregard the distinction between corporate entities. See *Carte Blanche*, 2 F.3d at 26 (citation omitted). A party seeking to hold a parent liable for a subsidiary's breach of contract bears the burden of establishing that the parent corporation "exercised complete domination of [the subsidiary] corporation in respect to the transaction attacked; and ... that such domination was used to commit a fraud or wrong against the plaintiff which resulted in the plaintiff's injury." *Morris v. New York State Dep't of Taxation and Fin.*, 82 N.Y.2d 135, 141,

603 N.Y.S.2d 807, 623 N.E.2d 1157 (1993); *see American Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir.1997).

To determine whether the parent company has exercised "complete domination" over its subsidiary, the Court considers:

> (1) disregard of corporate formalities; (2) inadequate capitalization; (3) intermingling of funds; (4) overlap in ownership, officers, directors, and personnel; (5) common office space, address and telephone numbers of corporate entities; (6) the degree of discretion shown by the allegedly dominated corporation; (7) whether the dealings between the entities are at arms length; (8) whether the corporations are treated as independent profit centers; (9) payment or guarantee of the corporation's debts by the dominating entity [or individual], and (10) intermingling of property between the entities.

*Rays Trading (H.K.) Co., Ltd. v. Judy-Philippine, Inc.*, No. 98-cv-0170, 1998 WL 355422, at *3–4 (S.D.N.Y.1998) (citing *Freeman v. Complex Computing Co., Inc.*, 119 F.3d 1044, 1053 (2d Cir.1997)).

Here, the Plaintiffs allege, amongst other things that Forsythe: comingled the funds of Solar Club with the bank accounts of Forsythe and Color Club; charged excessive fees to Solar Club; carried forward excessive loans and fraudulent losses to Solar Club; manipulated the books and records of Solar Club so Forsythe could usurp its profits; and engaged in other fraudulent or misleading financial accounting practices. ECF 55-1 ¶ 46. These facts sufficiently set forth allegations that Forsythe exercised complete dominion over Solar Club, resulting in injury to the Plaintiffs. *See Hughes v. BCI Int'l Holdings, Inc.*, 452 F. Supp. 2d 290, 308 (S.D.N.Y. 2006) ("Such claims are, necessarily, fact bound inquiries. Since plaintiffs have alleged that the Cunningham Defendants used BCI in this manner, and that plaintiffs suffered unjust injury as a result, plaintiffs' veil piercing claim must stand.").

Therefore, the Court grants the Plaintiffs' motion to amend with respect to Count Three.

### c. As to the Services Agreement.

The Defendants argue that the MadMack cannot assert a breach of the Services Agreement, a contract between Solar Club and Forsythe, due to MadMack's status as a non-party to the contract. In a two-sentence assertion, the Plaintiffs rebut that MadMack may bring claims derivatively on behalf

of Solar Club, because of its contractual rights of inspection and auditing under the agreement. In their brief, the Plaintiffs provide no explanation and cite no authority supporting the application of derivative standing to these claims. "This failure alone merits denial of [the Plaintiffs'] motion." *Quinio v. Aala*, No. 15-cv-4912, 2016 WL 2599120, at *2 (E.D.N.Y. May 4, 2016); *see also Rotblu v. 300 East 74th Street Owners Corp.*, 96-cv-5762, 1997 WL 16063, at *1 (S.D.N.Y. Jan. 16, 1997) (noting that defendant's failure to cite any legal authority in support of its motion "effectively places on the court the burden of conducting the initial legal analysis that is properly the responsibility of defendant's counsel" and is "unacceptable"); *Cea v. Access 23 TV*, 11-cv-3791, 2015 WL 5474070, at *2 (S.D.N.Y. Sept. 15, 2015) (same).

Notwithstanding the Plaintiffs' failure to provide legal support, it is well-settled that "a shareholder always has standing to sue for harm to the corporation, as long as the suit is brought derivatively, with any recovery going to the corporation." *Solutia, Inc. v. FMC Corp.*, 385 F.Supp.2d 324, 331 (S.D.N.Y.2005) (citing N.Y. Bus. Corp. Law § 626(a)). Conversely, a shareholder may not bring an action on his own behalf for a wrong against a corporation, even where the alleged wrong adversely affects the value of his shares. *Solutia*, 385 F.Supp.2d at 331; *see Abrams v. Donati*, 66 N.Y.2d 951, 953, 498 N.Y.S.2d 782, 489 N.E.2d 751 (1985) (observing that "[f]or a wrong against a corporation a shareholder has no individual cause of action ..."). This general rule "applies equally to closely held corporations as to large, publicly traded corporations." *Solutia*, 385 F.Supp.2d at 331 (*citing Wolf v. Rand*, 258 A.D.2d 401, 403, 685 N.Y.S.2d 708 (1st Dep't 1999)).

Here, it appears the Plaintiffs seek to recover damages suffered by Madmack, not for any damages to Solar Club. ECF 55-1 ¶ 53, Sixth Claim for Relief. As a result, the PSAC fails to allege a derivative claim under New York law, which prohibits shareholders from bringing actions on their own behalf for wrongs to the corporation. Madmack could only recover such damages pursuant to a direct claim for breach contract against Forsythe. However, Madmack cannot do so in this case,

because the Services Agreement was between Solar Club and Forsythe, and Solar Club, not the Plaintiffs, paid the fees for Forsythe's services.

Therefore, the Court denies the Plaintiffs' motion with regard to Count Six. For this reason, the Court also denies the Plaintiffs' motion to amend regarding Count Five, because this claim similarly attempts to recover direct damages through a derivative action on behalf of Solar Club. However, the Court will permit the Plaintiffs leave to file another proposed amendment regarding these claims, so long as the suggested amendments specify that any recovery for derivative claims would be obtained by Solar Club, and Solar Club alone.

> d.  *As to the Operating Agreement.*

The Defendants argue that the Plaintiffs failed to state a cause of action for breach of the Operating Agreement because they did not specifically allege how Forsythe breached any particular provision of the contract. The Court agrees.

In order to state a claim for breach of contract, a complaint must at least "set forth the terms of the agreement upon which liability is predicated . . . by express reference." *Howell v. Am. Airlines, Inc.*, No. 05-cv-3628, 2006 WL 3681144, at *3 (E.D.N.Y. Dec. 11, 2006). The PSAC omits any reference to specific contractual provisions, instead generally averring that Forsythe possessed a contractual obligation to act in good faith and fair dealing. ECF 55-1 ¶ 41. In fact, the only purported violations of the Operating Agreement alleged in the PSAC are violations of "the provisions of the License and Assumption Agreements" – entirely separate agreements. *Id.* ¶ 43. As a result, the PSAC is plainly insufficient as a matter of law. *See Mumin v. Uber Techs., Inc.*, 239 F. Supp. 3d 507, 537 (E.D.N.Y. 2017) (granting motion to dismiss where complaint "fail[ed] to point to any contractual provisions that support [the plaintif's] claims"); *James v. Countrywide Fin. Corp.*, No. 10-cv-4953, 2013 WL 249459, at *5 (E.D.N.Y. Jan. 23, 2013) (denying motion to

amend where the plaintiff "ha[d] not specified the terms of the agreement that defendant purportedly breached").

In their reply brief, the Plaintiffs allege that the Defendants breached paragraphs 5.1, by refusing to protect the Hatteras and Mattes' trade mark, and 5.3, by refusing to market Solar Club's products. ECF 57 at 6. However, facts raised solely in the briefs are beyond the scope of the Court's consideration when assessing whether a complaint states a claim. *See Sec. & Exch. Comm'n v. Cohen*, 332 F. Supp. 3d 575, 591 (E.D.N.Y. 2018) (holding that facts asserted in opposition to a motion to dismiss are "no substitute for well-pleaded allegations"); *In re Agape Litig.*, 773 F. Supp. 2d 298, 316 (E.D.N.Y. 2011) ("It is well-settled that a plaintiff cannot amend the complaint through briefs and affidavits, and "such facts are thus irrelevant for purposes of determining whether [the Plaintiff's] [c]omplaint should be dismissed for failure to state a claim.").

Therefore, the Court denies the Plaintiffs' motion to amend with respect to Count Four.

**4. As to Whether the Plaintiffs Adequately Alleged a Conspiracy.**

The Court denies the Plaintiffs' request to include claims for conspiracy. "To plead a cause of action for conspiracy, the plaintiffs must allege the primary tort and the following four elements: 1. a corrupt agreement between two or more parties; 2. an overt act in furtherance of the agreement; 3. the parties intentional participation in the furtherance of the plan or purpose; and 4. the resulting damage or injury." *Cleft of the Rock Found. v. Wilson*, 992 F. Supp. 574, 582 (E.D.N.Y. 1998) (Spatt, J.) (quoting *Kashi v. Gratsos*, 790 F.2d 1050, 1055 (2d Cir.1986)).

The PSAC contains no factual allegations showing the existence of a corrupt conspiracy amongst the Defendants. Rather, it merely generally asserts the existence of a scheme to steal the Plaintiffs' profits. The only support the PSAC provides for this assertion, however, are the actions underlying the claims for breach of fiduciary duty. As a result, the Plaintiffs claims amount to little

more than a conclusory assertion that a conspiracy must exist untethered from any facts that would support this conclusion. *Twombly* and *Iqbal* flatly rejected the reliance on pleading conspiracy in such a barebones manner. *See LaFlamme v. Societe Air France*, 702 F. Supp. 2d 136, 148 (E.D.N.Y. 2010) (granting motion to dismiss where plaintiff based conspiracy claim on "bald, conclusory allegation that" the parties "appear[ed]" to have an agreement and "fail[ed] to allege any specific facts providing any basis to infer an actual unlawful agreement by defendants"); *Brownstone Inv. Group, LLC. v. Levey*, 468 F.Supp.2d 654, 661 (S.D.N.Y. 2007) ("[T]o survive a motion to dismiss, a complaint must contain more than general allegations in support of the conspiracy. Rather, it must allege the specific times, facts, and circumstances of the alleged conspiracy.").

Putting these inadequacies aside, the conspiracy claim also fails under the "intracorporate conspiracy doctrine," which establishes that "officers, agents and employees of a single corporate entity are legally incapable of conspiring together." *Tufano v. One Toms Point Lane Corp.*, 64 F. Supp. 2d 119, 125 (E.D.N.Y. 1999); *In re Verestar, Inc.*, 343 B.R. 444, 483 (Bankr. S.D.N.Y. 2006) ("This doctrine provides that (i) a corporation cannot conspire with its own directors, officers or agents; (ii) officers, directors and agents of a corporation cannot conspire among themselves; and (iii) a parent corporation cannot conspire with its subsidiary or agents of its subsidiary.").

The PSAC alleges the existence of a conspiracy between Forsythe, the controlling owner and president of Forsythe, an officer of Forsythe, and entities controlled by Forsythe. As Judge Seybert eloquently explained, allegations that actors of this type engaged in a conspiracy fail as a matter of law:

> It is basic conspiracy law that a corporation cannot conspire with its agents or employees acting within the scope of their employment—or, more precisely, that

> since a corporation can only act through its agents, a claim that the agents collectively agreed to take some unlawful action in the name and on behalf of the corporation is simply another way of saying that the corporation acted unlawfully and therefore does not satisfy the basic requirements of a conspiracy.

*Tufano*, 64 F. Supp. 2d at 133; *see also Smith v. Town of Hempstead Dep't of Sanitation Sanitary Dist. No. 2*, 798 F. Supp. 2d 443, 461 (E.D.N.Y. 2011) (Spatt, J.) ("As all of the defendants were employees or board members of the Sanitary District, this doctrine thus bars the plaintiffs' conspiracy claim here."); *Tardd v. Brookhaven Nat. Lab.*, 407 F. Supp. 2d 404, 414 (E.D.N.Y. 2006) (Spatt, J.) (applying intracorporate conspiracy doctrine to conspiracy claims against directors of entity).

Therefore, the Court denies the Plaintiffs' motion to amend with respect to the conspiracy claims asserted in Counts Eight and Sixteen.

### 5. As to Whether the Plaintiffs Adequately Alleged Aiding and Abetting.

To state a claim for aiding and abetting a breach of fiduciary duty, a plaintiff must show: "(1) breach of fiduciary obligations to another of which the aider and abettor had actual knowledge; (2) the defendant knowingly induced or participated in the breach; and (3) plaintiff suffered actual damages as a result of the breach." *Kottler v. Deutsche Bank AG*, 607 F.Supp.2d 447, 466 (S.D.N.Y.2009) (citation omitted). "A claim of aiding and abetting a breach of fiduciary duty is similar to a claim for aiding and abetting a fraud in that both causes of action require a plaintiff to allege actual knowledge, substantial assistance, and proximate causation." *Agape*, 681 F.Supp.2d at 366–67 (citing *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 446 F.Supp.2d 163, 201 (S.D.N.Y. 2006)).

The PSAC contains no factual allegations showing actual knowledge by the Defendants or knowing inducement/participation in the purported breaches of fiduciary duty. With regards to these elements, the PSAC solely makes the conclusory assertions that the Defendants "have aided

and abetted" the supposed conspiracy "throughout the life of the business relationship of the parties." ECF 55-1 ¶ 59; *see also* ¶ 13 ("each of the DEFENDANTS have continued to aid and abet each other to further their conspiracy to defraud PLAINTIFFS and breach their fiduciary duties."). The PSAC's attempt to a state a claim in this regard is therefore futile. *See In re Kingate Mgmt. Ltd. Litig.*, No. 09-cv-5386, 2016 WL 5339538, at *44 (S.D.N.Y. Sept. 21, 2016) (dismissing aiding and abetting breach of fiduciary duty claims where plaintiffs "alleged only conclusory allegations [defendants] knowingly assisted in those breaches, [and] have provided no specific allegations as to how they assisted or induced them, or whether they acted dishonestly in doing so"); *Horvath v. Banco Comercial Portugues, S.A.*, No. 10-cv-4697, 2011 WL 666410, at *9 (S.D.N.Y. Feb. 15, 2011) (dismissing aiding and abetting claims where plaintiff "failed to plead non-conclusory facts that Millennium had actual knowledge of BCP's breach of fiduciary duty and that Millennium provided substantial assistance to BCP").

Accordingly, the Court denies the Plaintiffs' motion to amend with respect to the aiding and abetting claim alleged in Count Eight. As the Defendants only oppose the aiding and abetting fraud claims on the ground that the PSAC failed to state claim for an underlying predicate tort, the Court grants the Plaintiffs' motion to amend with regard to the aiding and abetting claim in Count Sixteen for the reasons previously stated.

## C. AS TO THE PREJUDICE TO THE DEFENDANTS.

In deciding whether undue prejudice exists to warrant denial of a motion to amend, courts must evaluate whether the amendment would: "'(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another

jurisdiction.'" *Agerbrink v. Model Serv. LLC*, 155 F.Supp.3d 448, 454 (S.D.N.Y. 2016) (citing *Monahan v. New York City Department of Corrections*, 214 F.3d 275, 284 (2d Cir. 2000)).

With regard to the delay factor, "[m]ere delay ... absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993) (quoting State Teachers Ret. Bd. v. Fluor Corp., 654 F.2d 843, 856 (2d Cir. 1981)). On the other hand, delay may provide a basis for denying a motion to amend when "the moving party knows or should have known of the facts upon which the proposed amendment is based, but failed to include them in the original pleading." *Priestley v. Am. Airlines, Inc.*, No. 89-cv-8265, 1991 WL 64459, at *1 (S.D.N.Y. Apr. 12, 1991). Similarly, the Court may consider delay as part of the prejudice analysis, as "the longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice." *Block.*, 988 F.2d at 350 (quoting *Evans v. Syracuse City Sch. Dist.*, 704 F.2d 44, 47 (2d Cir. 1983)).

The Defendants argue that the PSAC is unduly prejudicial because it contains new claims for relief based on different theories of liability than those alleged in the First Amended Complaint. The Defendants take particular issue with the belated assertion of these claims because the Plaintiffs attempt to enforce contracts containing New York choice of law and/or venue provisions, despite the extensive efforts expended opposing New York as the applicable law and venue.

The Court finds the Defendants' claim of prejudice to be unpersuasive. The new causes of action asserted in the PSAC relate to the same underlying business arrangement at issue in the previously-asserted causes of action. As a result, their inclusion will not greatly expand the scope of discovery or the trial. Moreover, this is not a case where the Plaintiffs could or should have asserted their claims in the operative complaint and failed to do so, as the Plaintiffs claim they

learned the relevant facts only after filing the First Amended Complaint. The Defendants' only argument for exclusion of these claims relate to past expenses incurred in litigating venue and choice of law. These expenses are immaterial to the question at hand – the costs moving forward due to the proposed amendments. As a result, the Court overrules the Defendants' objection based on prejudice.

## II.  CONCLUSION

For the foregoing reasons, the Court grants, in part, and denies, in part the Plaintiffs' motion to amend. Specifically, the Court grants the Plaintiffs' motion with regards to Counts One, Two, Three, Seven, and Nine, but denies the Plaintiffs' motion with regards to Counts Four, Five, Six, and Eight. The Court grants, in part, and denies, in part, the Plaintiffs' motion with regards to Counts Ten and Sixteen.

The Plaintiffs are directed to file an amended complaint consistent with this Order no later than fourteen days from today's date.

It is **SO ORDERED**:

Dated:  Central Islip, New York

January 14, 2019

_____/s/ Arthur D. Spatt____

ARTHUR D. SPATT

United States District Judge

21