UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
HATTERAS ENTERPRISES INC., *a California
Corporation*, MADMACK LLC, *a California Limited
Liability Company*, and DEBRA MATTES,
*an individual*,

                 *Plaintiffs,*

        -against-

FORSYTHE COSMETIC GROUP, LTD.,
HARRIET ROSE 2009 IRREVOCABLE TRUST,
HARRIET ROSE, *an individual*, MICHAEL ROSE,
*an individual*,

               *Defendants.*
------------------------------------------------------------X

**<u>MEMORANDUM ORDER</u>**

15-CV-5887 (JMW)

**A P P E A R A N C E S:**

    Robert M. Silverman, Esq.
    **Law Office of Robert M. Silverman**
    269 South Beverly Drive, Suite 1358
    Beverly Hills, CA 90212
    *Attorney for Plaintiffs*

        -and-

    Daniel Adam Osborn, Esq.
    **Osborn Law P.C.**
    43 West 43rd Street, Ste 131
    New York, NY 10036
    *Attorneys for Defendants*

**WICKS,** Magistrate Judge:

    Plaintiffs Hatteras Enterprises Inc. ("Hatteras"), Debra Mattes ("Mattes"), and MadMack

LLC ("MadMack") brought this action against Defendants Forsythe Cosmetic Group, Ltd.

("FCG"), Harriet Rose 2009 Irrevocable Trust (the "Trust"), Harriet Rose, and Michael Rose

1

alleging, *inter alia*, fraud and breach of contract arising out of a 2012 agreement for the rights to Plaintiffs' color-changing nail polish. (ECF No. 1.)  Trial is scheduled to commence on May 12, 2025.  Before the Court is Defendants' motion *in limine* (ECF No. 146) which seeks to preclude any evidence, argument, or testimony relating to events after June 29, 2012, and any mention of lost profits. (*Id.*)  For the reasons that follow, Defendants' motion *in limine* (ECF No. 146) is **DENIED**.

## BACKGROUND

**I.    *Factual Background and Procedural History***

The Court assumes the parties' familiarity with the background and procedural history of the case as articulated in the undersigned's Memorandum Order dated November 6, 2024 (ECF No. 140) and District Judge Brown's Memorandum Order dated August 8, 2022 (ECF No. 111). Focus here is only on the factual background and procedural history germane to the instant Motion *in limine.* (ECF No.146.)  On August 25, 2022, Judge Brown granted summary judgment for all of Plaintiffs' counts except "Counts Seven (Fraudulent Inducement), Eight (Securities Fraud under Cal. Corp. Code §2540), and Fourteen (Aiding and Abetting Fraud)." (ECF No. 111 at 35.)  Specifically, Judge Brown ruled that these three counts could proceed with respect to two alleged misrepresentations the Defendants made: (i) "that Forsythe was a $34 million company and the second largest nail polish company in the U.S. and (ii) [that] defendants had a large deal in place with Amway." (*Id.* at 29.)

Most relevant to the instant motion is the fact that this is not the first rodeo among the parties sparring over the issue of lost profits: Defendants made a motion *in limine* on January 27, 2023 seeking to exclude testimony and reports of Plaintiffs' Damages Expert and any mention of lost profits. (ECF No. 118.)  Judge Brown denied this motion *in limine* on July 11, 2023, and

made it clear that "legal challenges to certain discrete items of damages (*e.g. recovery of lost profits* as to one or more plaintiffs under New York fraud theories) may be renewed *if and when plaintiffs obtain a verdict*." (*See* Electronic Order dated 07/11/2023) (emphasis added).

This case was assigned to the undersigned for all purposes on October 3, 2023. (Electronic Order 10/03/2023.)  Both parties elected to proceed with a bench trial on March 1, 2024. (ECF No. 129.)  This Court granted such request. (Electronic Order dated 03/04/2024.) During the most recent status conference held on January 10, 2025, this Court scheduled the bench trial for this matter on May 12, 2025.  Defendants subsequently filed the instant motion *in limine* on February 3, 2025. (ECF No. 146.)  This motion is opposed by the Plaintiffs. (ECF. No. 148.)  Without seeking leave of court, Defendants filed a reply in support of their motion *in limine* on February 25, 2025. (ECF No. 149.)  Plaintiffs moved to strike this reply on February 26, 2025. (ECF No. 150.)  What remains is Defendant's motion *in limine* to preclude any mention of lost profits and events after June 29, 2012. (ECF No. 146.)

## II.    *The Parties' Contentions*

### A.    *Defendants' Motion in Limine*

Defendants' motion *in limine* seeks to preclude Plaintiffs from introducing at trial any evidence, argument, and testimony regarding lost profits and any events taking place after the signing of the six disputed agreements on June 29, 2012. (ECF No. 146.)  *First*, Defendants argue that lost profits are not recoverable under the three counts that survived Judge Brown's summary judgment due to New York's 'out-of-pocket' rule. (*Id.* at 2.)  According to Defendants, this rule limits recovery to "losses actually sustained instead of expected profits." (*Id.* at 2.) Defendants contend that this rule also applies to the California Corporations Code §25401 count under the conflict of laws principle of depecage. (*Id.*)  Defendants also claim that even if New

York law does not apply to that count, California Corporations Code §22501 limits recovery only to "an amount equal to the difference between (a) the price at which the security was bought plus interest at the legal rate from the date of purchase and (b) the value of the security at the time it was disposed of by the plaintiff plus the amount of any income received on the security by the plaintiff." (*Id.* at 3.)  *Second*, Defendants argue that, since Judge Brown's summary judgment Order held that the only remaining issue to be tried is whether Defendants made one or both material misrepresentations at the June 29, 2012 meeting, any events after that date are "not relevant to any claim to be tried." (*Id.* at 3.)

### B.    *Plaintiffs' Response in Opposition*

Plaintiffs vigorously oppose Defendants' motion both on procedural and substantive grounds.  *First*, Plaintiffs argue this motion *in limine* is an impermissible attempt to relitigate Judge Brown's denial of Defendants' first motion *in limine* seeking exclusion of lost profits. Plaintiffs argue that order was painfully clear that any attempt to challenge "certain discrete items of damages (*e.g.* recovery of lost profits . . . may be renewed if and when plaintiffs obtain a verdict." (*Id.* at 147 at 2.)  Therefore, Plaintiffs argue Defendants cannot file two motions *in limine* substantively covering the same issue. (*Id.*)  Plaintiffs contend that Defendants may raise these issues only after the trial has concluded. (*Id.*)

*Second*, Plaintiffs argue that lost profits are recoverable under both their fraudulent inducement claim and their Securities Fraud claim under Cal. Corp. Code §2540. (*Id.* at 4.) Plaintiffs assert that California's substantive law on securities fraud damages is similar New York law regarding fraudulent inducement, and, thus, lost profits are recoverable under both claims. (*Id.*)  Plaintiffs argue that although the out-of-pocket rule limits recoverable damages, New York law still allows for a plaintiff to recover "for actual pecuniary loss upon an economic

4

opportunity that the defendant fraudulently induced him to forego." (*Id.* at 2.)  Plaintiffs cite multiple cases for this proposition and argue this is what led to Judge Brown denying Defendant's prior motion *in limine*. (*Id.* at 2-3.)

*Third*, Plaintiffs argue that Defendants' desired exclusion of events after June 29, 2012, entirely ignores that their causes of actions require them to prove what damages, if any, they suffered because of fraudulent conduct.  Plaintiffs allege they must prove loss causation or proximate causation to successfully assert their fraud claims. (*Id.* at 4.)

**C**.    ***Defendants' Reply in Support and Plaintiffs' Motion to Strike the Reply***

Defendants' unauthorized Reply in Support of their Motion to Dismiss reiterated previous arguments and attempted to limit the applicability of Plaintiffs' caselaw to employment cases by citing two new decisions:  *Chevron Corp. v. Donziger*, No. 11 CIV. 0691 LAK, 2013 WL 3879702 (S.D.N.Y. July 29, 2013) (hereinafter "*Chevron Corp*") and *Atla-Medine v. Crompton Corp*., No. 00 CIV 5901 HB, 2001 WL 170666 (S.D.N.Y. Feb. 21, 2001) (hereinafter "*Atla-Medine*"). (*See* ECF No. 149.)  Both cases seek to weaken Plaintiff's reliance on *Stewart v. Jackson & Nash,* 976 F.2d 86, 88 (2d Cir.1992) (hereinafter "*Stewart*") (*Id.*)

Plaintiffs then moved to strike Defendants' Reply in Support . (ECF No. 150.)  Plaintiffs argue that this reply violated the undersigned's individual rules and practices. (*Id.*)  In their Motion to Strike, Plaintiffs i) reiterated previous arguments, ii) proffered that Defendants' motion *in limine* is likely an impermissible attempt to reconsider Judge Brown's prior court order

denying the first motion *in limine*,[1] and iii) distinguished the applicability of *Chevron Corp* to

the underlying case. (*Id.* at 2.)[2]

## MOTIONS IN LIMINE: THE LEGAL FRAMEWORK

Before trial, parties may seek *in limine* relief to exclude anticipated evidence that may be

inadmissible or irrelevant. *See Jaquez v. Flores* (*In re Estate of Jaquez*), No. 10-cv-2881 (KBF),

2016 U.S. Dist. LEXIS 34521, at *4 (S.D.N.Y. Mar. 17, 2016). "The purpose of an *in limine*

motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance

of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy

argument at, or interruption of, the trial." *United States v. Ulbricht*, 79 F. Supp. 3d 466, 478

(S.D.N.Y. 2015) (quoting *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996)).

---

[1] Plaintiffs argue this likely violates Rule 6.3 of the Local Rules of the Eastern District of New York which would requires a losing party to move for reconsideration of a court order within 14 days following entry of such order.

[2] While Defendants' Reply in Support is not authorized by the undersigned's Individual Practices and Rules, *see* Rule 3A, the Court notes that to succeed on a Rule 12(f) motion to strike, a movant generally must demonstrate that "(1) no evidence in support of the allegations would be admissible; (2) that the allegations have no bearing on the issues in the case; and (3) that to permit the allegations to stand would result in prejudice to the movant." *Roe v. City of New York*, 151 F. Supp. 2d 495, 510 (S.D.N.Y. 2001). Specifically, under Federal Rule of Civil Procedure 12(f), the district court may strike material from filings on the grounds that such material is "redundant, immaterial, impertinent, or scandalous. . . [and] [b]ecause such rejected or stricken material is not relevant to the performance of the judicial function[,] it would not be considered a judicial document[,] and would enjoy no presumption of public access." *Brown v. Maxwell*, 929 F.3d 41, 51-52 (2d Cir. 2019) (internal citations omitted); *see also Wine Markets Int'l, Inc. v. Bass*, 177 F.R.D. 128, 133 (E.D.N.Y. 1998) ("Motions to strike are not generally favored, except in relation to scandalous matters."). Because Plaintiffs have not shown how the content of Defendants' Reply, while unauthorized, is irrelevant to the claims asserted or is prejudicial, and, because the Court's consideration of Defendants' Reply does not otherwise impact the outcome of its decision on Defendants' motion *in limine* (*see infra*, **DISCUSSION**), Plaintiffs' motion to strike is ***denied***. *See Capri Sun GmbH v. Am. Beverage Corp.*, 414 F. Supp. 3d 414, 423 (S.D.N.Y. 2019) ("Federal Courts have discretion in deciding whether to grant motions to strike" under Fed. R. Civ. P. 12(f)).

"Evidence should not be excluded on a motion *in limine* unless such evidence is clearly inadmissible on all potential grounds."[3]  *Colon v. City of New York*, No. 16-CV-4540 (VSB), 2023 U.S. Dist. LEXIS 179763, at *4 (S.D.N.Y. Oct. 5, 2023).  "The movant has the burden of establishing that the evidence is not admissible for any purpose."  *Walker v. Schult,* 365 F. Supp. 3d 266, 275 (N.D.N.Y. 2019). "Although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials."  *Luce v. United States*, 469 U.S. 38, 41 n. 4 (2023); *Rivera v. Inc. Vill. of Farmingdale,* 29 F. Supp. 3d 121, 125 (E.D.N.Y. 2013) ("A motion *in limine* lies in this Court's 'inherent authority to manage the course of its trials.") (quoting *Highland Capital Mgmt., L.P. v. Schneider,* 551 F. Supp. 2d 173, 176 (S.D.N.Y. 2008)).

It is within this framework that the Court analyzes the Defendants' motion *in limine*.

## DISCUSSION

I.    ***Judge Brown's July 11, 2023 Order Forecloses Relief Sought***

The Court agrees with Plaintiffs that this motion *in limine* is procedurally foreclosed by Judge Brown's July 11, 2023 order denying Defendant's first motion *in limine*.  Although this motion seeks a broader exclusion of *any* mention of lost profits and seeks to exclude events past June 2012, that is not enough to warrant circumscribing Judge Brown's order that is squarely on-point and law of the case.  Defendants had their opportunity to seek reconsideration of Judge Brown's order within the allotted 14 days set forth in Rule 6.3 of the Local Rules of the Eastern District of New York.  They chose not to at that time. Parties chart their own procedural course.

---

[3] Even though an *in limine* ruling is made pre-trial, the ruling may nevertheless be reviewed at trial, and "'the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling.'" *Great Earth Intern. Franchising Corp. v. Milks Dev.,* 311 F. Supp.2d 419, 424 (S.D.N.Y. 2004) (quoting *Luce,* 469 U.S. at 41-42).

No viable grounds were offered justifying the filing of the tardy motion for reconsideration, and

the Court finds no independent good cause.  As the Hon. Arthur D. Spatt observed in an earlier

decision in this case denying Defendant's motion to retransfer the case back to California,

> "The 'law of the case' doctrine posits that if a court decides a rule of law, that decision should continue to govern in subsequent stages of the same case. Sagendorf-Teal v. Cty. of Rensselaer, 100 F.3d 270, 277 (2d Cir. 1996) (quoting DiLaura v. Power Authority of State of New York, 982 F.2d 73, 76 (2d Cir. 1992)). "Law of the case rules have developed to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit." In re PCH Associates, 949 F.2d 585, 592 (2d Cir. 1991) (quoting 18 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 4478, at 788 (1981)).

*Hatteras Enters. Inc. v. Forsythe Cosmetic Group, Ltd.*, 2016 WL 4083386, at \*4 (E.D.N.Y. July 30, 2016).

Although the Court's Order could have ended there by denying the motion on procedure

alone, the following analysis explains why Defendants' substantive arguments fail as well.


## II.      <u>*Plaintiffs are Entitled to Prove Damages*</u>

Plaintiffs correctly assert that events after June 29, 2012, are indeed relevant to the

underlying causes of action in this case.  Events taking place after the signing of the six

agreements tend to demonstrate what cognizable injuries the Plaintiffs suffered at the hands of

the Defendants; to rule otherwise would allow a plaintiff to assert a cause of action with no way

to prove what they are owed. The Federal Rules of Evidence provide a test for evidence that is

relevant.  That is, evidence is relevant if: (a) "it has any tendency to make a fact more or less

probable than it would be without the evidence;" and (b) "the fact is of consequence in

determining the action."  Fed. R. Evid. 401.  In other words, this fact must have some effect on

"the outcome of the suit under the governing law."  *Arlio v. Lively*, 474 F.3d 46, 52 (2d Cir.

2007).  Relatedly, evidence is "not relevant if it does not tend to prove or to disprove a matter at

issue in the case." Matthew Bender & Company, Inc., 1 Federal Courtroom Evidence § 401 (2023); *see also Henry v. Wyeth Pharms., Inc.,* 616 F.3d 134, 150 (2d Cir. 2010). "So long as a chain of inferences leads the trier of fact to conclude that the proffered submission affects the mix of material information, the evidence cannot be excluded at the threshold relevance inquiry." *689 Eatery Corp. v. City of New York*, Nos. 02-cv-4431 (LJL), 02-cv-4432 (LJL), 02-cv-8333 (LJL), 18-cv-3732 (LJL), 2023 U.S. Dist. LEXIS 189875, at *10 (S.D.N.Y. Oct. 23, 2023) (citing *United States v. Jones*, No. 16-cr-0553 (AJN), 2018 WL 1115778, at *9 (S.D.N.Y. Feb. 27, 2018)).

There is no plausible argument to justify finding that damages are irrelevant to the causes of action asserted by the Plaintiffs. Rather, damages are one of the four core elements for a fraudulent inducement claim: (1) that the defendant misrepresented a material fact (2) with knowledge of the falsity of the representation and intent to defraud, (3) inducing justifiable reliance by the plaintiffs, (4) *who were injured. See, e.g., Stanley v. Bray Terminals, Inc.,* 197 F.R.D. 224, 228 (N.D.N.Y.2000) (citing cases); *Virola v. XO Communications*, Inc., 2008 WL 1766601, at *13 (E.D.N.Y.,2008); *Laub v Faessel*, 297 A. D. 2d 28, 31 (N.Y. Ap. Div. 2 Dep't. 2002) (emphasis added). Damages are also a core element of violations of Cal. Corp. Code Section 25401.[4] To establish damages the Plaintiffs allegedly suffered they must be afforded the opportunity to lay bare at trial events occurring *after* the agreements were executed.

---

[4] Cal. Corp. Code Section 22501, the corresponding provision that establishes a civil remedy, states: "any person who violates Section 25401 shall be liable to the person who purchases a security . . . [and such person] may sue either for rescission or for damages."

### III.  *Lost Profits Are Relevant to Plaintiffs' Fraudulent Inducement Claim*

The Court additionally finds that New York law does not entirely preclude seeking lost profits under fraudulent inducement claims.[5]  While New York's 'out-of-pocket' rule limits recoverable damages to pecuniary losses, such pecuniary losses *can* include passing on alternative business opportunities, or contracts, if they were sufficiently concrete and particularized at the time the Plaintiff rejected them.

In effect, Plaintiffs must allege that but for the fraudulent inducement of the Defendants, they would have gone through with another existing business opportunity or contract. *See Doelha v. Wathne Ltd., Inc*., No. 98 Civ. 6087 (CSH), 2000 WL 987280, at *7 (S.D.N.Y. July 17, 2000) ("If the proof is there, a defrauded plaintiff may base a claim for actual pecuniary loss upon an economic opportunity that the defendant fraudulently induced him to forego.") (hereinafter "*Doelha*"); *see also Stewart v. Jackson & Nash*, 976 F.2d 86, 88 (2d Cir. 1992) (allowing a claim for fraud to proceed based on damage to the plaintiff's career development caused by fraudulent inducement to work for a firm with no real work in her practice area); *Virola v. XO Communications, Inc*., No. 05-CV-5056 (JG)(RER), 2008 WL 1766601, at *15 (E.D.N.Y. Apr. 15, 2008) ("The Second Circuit takes a rather flexible approach to the out-of-pocket rule, permitting compensation for foregone economic opportunities such as lost career development."); *Variblend Dual Dispensing Sys. LLC v. Crystal Int'l (Grp.) Inc.*, No. 18 CIV. 10758 (ER), 2021 WL 1198834 (S.D.N.Y. Mar. 30, 2021) (reaffirming the validity of *Doelha's* holding whilst emphasizing that the rejection of an alternative economic opportunity must immediately precede the fraudulent course of action.); *Schonfeld v. Hilliard*, 218 F.3d 164, 183

---

[5] The parties dispute whether New York law or California law should determine whether lost profits are recoverable under the Cal. Corp. Code §25401 claim. The Court declines to address this conflict of laws issue at this time. The parties are instructed to brief this issue in their proposed findings of fact and conclusions of law following conclusion of the bench trial.

(2d Cir. 2000) (holding that the out-of-pocket rule permits recovery for a plaintiff's reliance interest, including damages incurred by passing up other business opportunities." (internal quotation marks omitted).   Lastly, the rejected economic opportunity must actually exist, and damages caused by such rejection cannot be too remote or too speculative. *See Doelha*, 2000 WL 987280, at *9 n2; *see also Allard v. Arthur Andersen & Co. (USA)*, 924 F. Supp. 488 (S.D.N.Y. 1996) ("[P]laintiffs may recover only 'out of pocket' damages that can be ascertained with reasonable certainty.")

Here, Plaintiffs assert that they rejected two concrete economic opportunities due to the fraudulent inducement of the Defendants: *first*, Plaintiffs allege that due to Defendant's fraudulent misrepresentations, they were forced to "give up a contract with Orly to manufacture and sell the color changing nail polish for a 20% royalty" (ECF No. 147 at 3), and, s*econd*, Plaintiffs claim they were forced to back out of a contract with an Italian company, which was manufacturing and selling Plaintiffs' nail polish in Europe. *Id.*  Plaintiffs allege they backed out of these alternate economic opportunities due to Defendant's insistence that their joint venture be exclusive. *Id.*  Although Defendants argue that Plaintiffs have not sufficiently proven the existence of a contract with Orly or with the Italian company,[6] such questions are best resolved at trial – Plaintiffs do not need to prove their case to survive a motion *in limine*.

The cases cited by Defendants in their Motion and their Reply in Support of the Motion *in limine* are inapposite and not persuasive. *See* ECF Nos. 146, 149.  Defendants primarily rely on *Chevron Corp*—that argues that the *Stewart* decision was limited to its facts and "said nothing about whether reputational injury is recoverable in a fraud action." No. 11 CIV. 0691 LAK, 2013 WL 3879702 at *7-8 (S.D.N.Y. July 29, 2013).  Defendants make too much of too

---

[6] *See* ECF No. 149 at 2.  Defendants allege that Plaintiffs, at most, have shown they had a proposal from Orly, not an executed contract.

11

little; to say nothing about whether reputational injury is recoverable does not necessarily imply that such injuries are foreclosed.  To the contrary, *Stewart* itself recognized that reputational injury could be recoverable by finding that the plaintiff's fraudulent inducement claim survived the defendant's motion to dismiss. 976 F.2d 86 at 90.  If the *Stewart* court intended to foreclose relief based on alternate economic opportunities, the Court could and would have done so.  It did not.

 Furthermore, *Stewart's* progeny has only solidified its holding. *See Doelha*, 2000 WL 987280 at *7; *Variblend Dual Dispensing Sys. LLC*, 2021 WL 1198834 (S.D.N.Y. Mar. 30, 2021).  Defendants had it partially correct when they state *in their own motion* that loss of professional opportunity or other forms of reputational loss may be potentially recoverable "in a narrow category of employment-related fraudulent inducement cases." ECF No. 146 at 3.  Loss of professional opportunities are recoverable in a fraudulent inducement action—full stop—Defendants fail to point out any language in *Stewart* or *Doelha* constricting their holdings to employment cases. *See Variblend Dual Dispensing Sys. LLC*, 2021 WL 1198834 at *5-6 (S.D.N.Y. Mar. 30, 2021) (quotation marks omitted) (reaffirming that the out-of-pocket rule permits recovery for a plaintiff's reliance interest, including damages incurred by passing up other business opportunities).

The second case relied upon by Defendants, *Atla-Medine v. Crompton Corp.*, also does not change alter this conclusion. No. 00 CIV 5901 HB, 2001 WL 170666 at *4-5 (S.D.N.Y. Feb. 21, 2001). The Court in *Atla-Medine* specifically rejected comparisons to *Stewart* since in their case plaintiff *did not* allege that defendants' statements induced him to contract with the defendants; for example, at oral argument plaintiff's counsel stated: "we're not alleging that they induced us to make a contract necessarily." *Id.* at *4.  Therefore, *Atla-Medine* presents a

different factual scenario than the one here or in *Stewart*. Here, there are plausible allegations that but for the Defendants' fraudulent inducement, Plaintiffs would not have entered into the six ill-fated agreements. Lastly, this case also does not overturn or diminish the validity of *Stewart*'s holding.

For the reasons set forth herein, Defendants' motion *in limine* is denied. Just as a three-legged stool cannot stand on two legs, Plaintiffs are afforded the opportunity to assert what damages, if any, they are entitled to receive to successfully prove the elements of their case. It is an essential element of the claims. Whether the Plaintiffs have successfully alleged injuries that are recoverable under their remaining claims is the ultimate question that will be addressed at trial. For now, it is sufficient to say that lost profits are relevant to the fraudulent inducement claim.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion to strike Defendants' reply (ECF No. 150), as well as Defendants' motion *in limine* (ECF No. 146) are both **DENIED**. The parties are directed to address the scope of damages and which state law controls in their proposed findings of fact and conclusions of law following conclusion of trial testimony.

Dated: Central Islip, New York
        March 4, 2025

S O   O R D E R E D:

/S/ *James M. Wicks*

JAMES M. WICKS
United States Magistrate Judge
