IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JMWHATTERAS ENTERPRISES, INC., a California Corporation; MADMACK LLC, a California Limited Liability Company; and DEBRA MATTES, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>FORSYTHE COSMETIC GROUP, LTD; COLOR CLUB, LLC, a New York Limited Liability Company; HARRIET ROSE 2009 IRREVOCABLE TRUST; HARRIET ROSE, an individual; and MICHAEL ROSE, an individual,<br><br>Defendants. | Case No. 2:15-CV-05887 (JMW)<br><br>**PLAINTIFFS' MOTIONS UNDER F.R.C.P. RULE 52 (a) (1) (5) (6) (b) and F.R.C.P. RULE 59 (a) (2) (b) (c) (d) (e)** |

COMES NOW, PLAINTIFFS HATTERAS ENTERPRISES, INC., DEBRA MATTES AND MADMACK LLC AND RESPECTFULLY SUBMIT THEIR MOTIONS UNDER FEDERAL RULES OF CIVIL PROCEDURE RULES 52 AND 59 TO CORRECT, AMEND FINDINGS OF FACT, CONCLUSIONS OF LAW, FINAL JUDGMENT AND FOR A NEW TRIAL.

### MEMORANDUM OF POINTS AND AUTHORITIES

**I.     INTRODUCTION**

The case was tried before this Court on May 12, 2025 to May 1 4, 2025. (ECF Nos. 162-64.) The Court submitted its Final Statement of Facts and Conclusions of Law on October 28, 2025. (ECF No. 173) The Court granted judgment in favor of Defendants, Harriet Rose, Michael Rose and Harriet Rose 2009 Irrevocable Trust, on Plaintiffs' claims for relief. On October 29, 2025, the Clerk entered judgment for Defendants. (ECF No. 174) Consequently, Plaintiffs Motions under Federal Rules of Civil Procedure Rules 52 and 59 are timely filed. It is respectfully submitted that the evidence submitted at trial conclusively establishes unequivocally that Plaintiffs have succeeded in proving its fraudulent inducement claim and its securities claim under the pertinent California Securities law.

With all do respect, the Court's Final Statement of Facts and Conclusions of Law misconstrue case law and omits controlling legal precedent. Considering the totality of the evidence presented to the Court, the Court's findings of fact in many instances were clearly erroneous. As such, Plaintiffs are entitled to a correction of the findings and legal conclusions, to vacate the Judgment entered in favor of Defendants, order a new trial or enter judgment in

favor of Plaintiffs. Plaintiffs are seeking to alter or amend the Judgment under F.R.C.P. Rule 59 (e) and to obtain a new trial F.R.C.P. Rule 59 (a) (2)

## II. THE POWER OF THE COURT UNDER F.R.C.P. RULES 52 AND 59

F.R.C.P. Rule 52 permits a party to question the sufficiency of the evidence supporting findings, object to the findings and move to amend them. (Rule 52 (a) (5)) The Court may amend the findings, make additional findings and may amend the judgment accordingly. (Rule 52 (b))

F.R.C.P. Rule 59 (a) (2) grants the power to the Court to "open the judgment, take additional testimony, amend the findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment." The Court may order a new trial on its own motion or after considering a party's motion for a new trial. (Rule 59 (d)). Motions to alter or amend judgment are permitted under Rule 59 (e).

The case of *National Metal Finishing Company, Inc. v. Barclaysamericancommercial, Inc.*, 899 F. 2d 119 (2nd Cir. 1990), is instructive. The Court of Appeals ruled that a district court has the power to reverse a prior judgment reconsidering its prior judgment for plaintiff and granting judgment for Defendant under F.R.C.P Rule 52 (b). Defendant also moved under F.R.C.P. Rule 59 (e). The Appellate Court opined that Rule 59 (e) provides the power to the district court to amend a judgment reversing a prior judgment for plaintiff. (citing *Kort v. Western Surely Co.*, 705 F.2d 278, 280-281 (8th Cir. 1983) The Appellate Court stated that either Rule 52 or Rule 59 provided the district court with the power to do so.

### III. FINDINGS OF FACT TO BE AMENDED

#### A. FRAUD IN THE INDUCEMENT CLAIM FOR RELIEF

Extrinsic evidence provided to the Court by Plaintiffs contradict the testimony of Harriet Rose. While at the January 2012 meeting, Ms. Rose denied stating that Forsythe was a $34 million company, the extrinsic evidence proves otherwise. See *Doe v. Menefee,* 391 F. 3d 147, 164 (2d Cir 2004) Harriet Rose stated at this meeting that Forsythe sold to 85 countries through distributors. (Tr. 44, lines 7-25 to Tr. 45, line 1) Mattes read an article about Forsythe in beautystore business.com (August 2012). Plaintiffs' Exhibit 35 contains this article. In the article Harriet Rose stated two years ago Forsythe purchased a new building to expand its manufacturing capabilities and a new warehouse. Ms. Rose stated that Forsythe expanded its customer base by selling to over 100 countries. (Mattes, Tr. 72, lines 19-25). Mattes reasonably concluded that Forsythe was a substantial company.

Harriet Rose could not confirm that at the January 2012 meeting, Michael Rose discussed the Amway deal for 600,000 beads order. She did not deny that this occurred. (Tr. 223, lines 3-22)

When Michael Rose called Mattes in November 2011, Mattes took contemporaneous notes of the call. Plaintiffs' Exhibit 18 contains these notes. According to the notes, Michael Rose stated Forsythe sold in 95 countries. Forsythe sold one million to a million and a half bottles to Urban Outfitters. He also stated that Forsythe sold 85 million bottles per year and it is bigger than Orly and second only to OPI 200 million bottles. (Tr. 39, lines 1-25) (Tr. 40, lines 13-23; lines 24-25 to Tr. 41, lines 1-8) Plaintiffs are not rehashing prior arguments. The purpose is to

discount Harriet Rose's testimony by this extrinsic evidence and for the Court to consider it in that light.

Regarding Amway, Michael Rose admitted he discussed Urban Outfitters and Amway with Mattes at the January 2012 meeting. (Tr. 146, lines 4-18) He did admit and confirmed his deposition testimony that Forsythe lost Amway as a customer in 2011 due to a change in Amway buyers. (Tr. 174, lines 5-16). Whitney Matza admitted at trial that Defendants' Exhibit 400 listing Amway as a Forsythe client from 2011 to 2014 only pertained to nail polish and did not refer to color changing beads. (Tr. 259, lines 5-25) (Tr. 263, lines 20-25 to Tr. 264, lines 1-5)

### B. REASONABLE RELIANCE.

The Court concluded that Mattes was a sophisticated business woman and therefore could not reasonably rely on the fraudulent statements made to her by Defendants. In addition, the Court discounted Mattes' reliance on the projections supplied to her by Forsythe accountant, Robert Rosen. The court's conclusions are contrary to relevant case law.

First from the outset, in 2011 Forsythe made Mattes sign a confidentiality agreement regarding Amway. Plaintiffs' Exhibit 40 is an email from Neil Kaufman, a Forsythe attorney, informing Mattes' lawyer that Mattes is not to contact Amway for sales of Mattes' products. Mattes confirmed that Forsythe never permitted her to contact Amway. (Tr. 107, lines 16-19)

The Court put great reliance on the emails between Mattes and Michael Rose regarding an August 2, 2012 meeting with Amway. (Plaintiffs' Exhibit 42) The Court considered this as evidence that the Amway deal was still in play. However, the Court considered Michael Rose to lack credibility as a witness.

Defendants consistently denied Mattes access to Forsythe financial information. In fact, in an April 8, 2012 email from Forsythe attorney to Mattes' counsel, Neil Kaufman told Mattes attorney that Forsythe would not provide to Mattes any Forsythe financial information. See Plaintiffs' Exhibit 28. Plaintiffs' Exhibit 30 is an email, dated July 13, 2013, from Harriet Rose to Mattes stating Mattes was not allowed to contact Forsythe accountant directly.

Mattes did receive projections from Forsythe accountant Robert Rosen. The projections were verified by Michael Rose and Harriet Rose. This is Plaintiffs' Exhibit 39 (bate stamped 00683) Projected sales for year one was $10,400,000. Projected profit with direct cost would be $5,080,000. These projections were based upon actual current cost of Forsythe production. Mattes relied on these projections. (Tr. 64, lines 15-19)

In assessing the reasonableness of reliance, New York courts follow a two-tier standard. "When matters are held to be peculiarly within defendant's knowledge, it is said that Plaintiff may rely without prosecuting an investigation, as he has no independent means of ascertaining the truth." See, *Mallis v. Bankers Tr. Co.*, 815 F. 2d 68, 80 (2d Cir 1980) This is exactly the situation that confronted Plaintiffs. This Court found that Mattes did not do any independent research. But the record reveals that she did independent research on the internet. As Magistrate Judge Lindsay recognized since Forsythe was a private company it was virtually impossible for Mattes to gain access to Forsythe's financial information.

The following are case law precedent establishing that Mattes reasonably relied on Defendants' misrepresentations to her detriment.

1. **Projections and Sophistication**

In *Aris Multi-Strategy Offshore Fund, Ltd. v. Devaney,* 2009 NY Slip Op 52738 (U) [26 Misc 3d

5

1221 (A)], the Court rejected the Defendants' argument that statements of their performance are just "puffery." The projections of performance by Defendants were grounded in present facts stating the abilities of Defendant. *Aris* Court cited two cases stating a company's future performance if made at the time the speaker knows that the performance cannot be achieved may be grounded in fraud. See *Cohen v. Koenig*, 25 F. 3d 1168, 1172 (2d Cir 1994) and *Elkind v. Liggett & Myers, Inc.*, 635 F. 2d 156, 164 (2d Cir 1980)

*Arlis* also addressed the sophistication of the Plaintiff. The Court cited cases stating that "even a sophisticated investor, could still justifiably rely on Defendants misrepresentations." citing *National Western Life Ins. Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* 89 F. App's 287, 294-295 (2d Cir 2004) and *Fraternity Fund, Inc. v. Beacon Hill Asset Mgt. LLC,* 376 F. Supp. 2d 385, 411 (S.D.N.Y 2005) ("Hedge fund investor could reasonably rely on information provided concerning the fund's performance because the defendants were 'uniquely positioned to know' the fund's value and because, as limited partners, their relationship with the defendants was fiduciary in nature.") *Arlis* Court recognized that the element of scienter is most likely to be in the exclusive control of the Defendant, it is least amenable to direct proof.

### C. LOST PROFIT DAMAGES

The Court stated that New York law does not permit recovery of lost profits in Fraudulent inducement claims. (ECF No. 173 at 19) This is contrary to established precedent.

In *Laduzinski v. Alvarez & Marsal Taxand LLC*, 2015 NY Slip Op 06646 August 25, 2015, the New York Supreme Court held that s Plaintiff could recover lost profits when defendant's fraudulent inducement resulting in plaintiff losing his prior employment opportunity.

In *Virola v. Xo Communications, Inc.*, 2008 U. S. District Court LEXIS 30413, *48 (E. D. N. Y. April 15, 2008, the Court recognized that a plaintiff can recover lost profits for injury to her profession due to defendant's fraudulent inducement. The Court cited the case of *Stewart v. Jackson Nash*, 976 F. 2d 86,88 (2d Cir 1992) establishing that a plaintiff can recover lost profits due to plaintiff's damage to plaintiff's career development. The Court also cited *Doelha v. Wathne, Ltd*, No. 98-CV-6087 (CSH) 2000 WL 987280, *7 (S.D.N.Y. July 17, 2000) which ruled "defrauded plaintiff may base a claim for actual pecuniary loss upon an economic opportunity that the defendant fraudulently induced him to forego."

In *Navaretta v. Group Health Inc.*, 595 N. Y. S. 2d 839 (3d Dept. 1993), the Court stated that the plaintiff could recover loss of benefits and salary connected with its prior employment due to the fraudulent inducement of defendant.

Plaintiffs herein are entitled to correct the Court's Conclusions of Law to reflect New York law on lost profits. In *Cohn v. Koenig*, 23 F. 3d 1168, 1172 (2d Cir 1994), the Court made the following statement that buttresses the legitimacy of Plaintiffs' reliance stating, "a relatively concrete statement as to a company's future performance, if made at the time of when the speaker knows that the representation is untrue and could not be achieved may constitute fraud." This is exactly the situation Plaintiffs found themselves in after being stone walled by Defendants from ascertaining any financial information on Forsythe and forbidding Plaintiffs from contacting Amway.

It should be noted that the Court misconstrued the testimony of Mattes regarding her receipt of Solar Club's K-1. The Court stated that Mattes was displeased of the results and that an unfavorable result does not equate to fraud. (ECF No. 173 at 17) Mattes testified that this result caused her to doubt the representation of Defendants that Forsythe was a $34 million company second only to OPI. (See Tr. 68-6-25;67)

**D. JAY ABRAMS**

The Court stated in its Opinion that Jay Abrams did not use the Orly 20% royalty in his calculations and that he did not consider Avon and Orly as well. (ECF No. 173 at 14) Plaintiffs desire to correct the Court's statement since Abrams, indeed, used the Orly royalty in computing the worth of Plaintiffs' business when pursuing a deal with Forsythe.

He also considered Avon and Orly in computing lost profits. He confirmed that the companies Plaintiffs were to do business with before proceeding with Forsythe were Orly, Avon and OPI. (/tr. 365, 15-25 to Tr. 366, line 1) In fact, Abrams used the Orly royalty percentage when calculating the worth of Plaintiffs' business at the time of the Forsythe transaction. (Tr. 380, lines 13-25) (Tr.381, lines 4-22)

**E. JEFF PINK**

At the time that Mattes was negotiating with Orly, Jeff Pink knew that Mattes had been selling her nail polish in the United States. (Tr. 295, lines 1-12) Jeff Pink reiterated that it's a go. (Tr. 293, lines 2-7) Considering that Forsythe sold Mattes' nail polish in the United States and abroad with substantial profits, there can be no doubt that FDA approvals were not a concern.

## IV. CONCLUSION

Plaintiffs are seeking a new trial, vacation of the Judgment in favor of Defendants and a new Judgment in Plaintiffs' favor. The errors in the legal analysis contained in the Court's Conclusions of Law entitle Plaintiffs to be awarded a Judgment or a new trial. The attached Declaration of Debra Mattes supports this requested relief.

Dated November 23, 2025    Respectfully submitted,

LAW OFFICE OF ROBERT M. SILVERMAN

By: /s/ Robert Silverman

Robert M. Silverman for all Plaintiffs
269 South Beverly Drive, Suite 1358
Beverly Hills, CA 90212
Tel: (626) 340-9261
Fax: (760-565-1699

# DECLARATION OF DEBRA MATTES

I, Debra Mattes, declare:

1. I am a Plaintiff in this matter. I am the sole owner of Hatteras Enterprises, Inc. and MadMack, LLC. Based upon my personal knowledge, if called as a witness, I would competently testify to the truth of the following facts.

2. I make this Declaration in support of Plaintiffs' Motions under Federal Rules of Civil Procedure Rules 52 and 59.

3. Corey Ingber is a well-respected member of the State Bar of California. The Court should take this into account in assessing his credibility. He would never commit perjury when testifying in court under oath.

4. The Court should recognize that I sold my color changing nail polish under the trade name "Blaze" throughout the United States and in Europe. European countries certified that my product passed all safety tests. Indeed, Forsythe sold over $4 million of Ruby Wing without any regulatory problems. See Defendants' Exhibit 400. My product satisfied all FDA approvals. Defendants' FDA argument is a "red herring."

I declare under penalty of perjury under the laws of the State of California that the forgoing is true and correct.

_____
Debra Mattes

10

# CERTIFICATE OF SERVICE

I, Robert Silverman, declare:

1. I am counsel of record for all Plaintiffs in this matter. Based upon my personal knowledge, if called as a witness, I would competently testify to the truth of the following facts.
2. On November 23, 2025, I caused to be emailed a true and correct copy of Plaintiffs' Rules 52 and 59 motions addressed to the following:

VIA EMAIL

Daniel Osborn, Esq.

Lindsay Trust, Esq.

Osborn Law, P.C.

43 West 43d Street, Suite 131

New York, New York 10036

dosborn@osbornlawps.com

ltrust@osbornlawpc.com

I declare under penalty of perjury under the laws of the State of California that the forgoing is true and correct.

*/s/ Robert M. Silverman*

Robert M. Silverman